NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LEONARD R. MASSEY, *Plaintiff/Appellee,*

*v.*

1ST HC L.L.C., *Defendant/Appellant.*

No. 1 CA-CV 16-0763
FILED 2-8-2018

Appeal from the Superior Court in Maricopa County
No.  CV2015-091148
The Honorable David M. Talamante, Judge

**AFFIRMED**

COUNSEL

Lake & Cobb, PLC, Tempe
By Hank E. Pearson, Richard L. Cobb
*Counsel for Plaintiff/Appellee*

Lewis Roca Rothgerber Christie, LLP, Phoenix
By Robert G. Schaffer, Amanda L. Thatcher, Daniel A. Arellano
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge James B. Morse Jr. joined.

---

**J O N E S**, Judge:

**¶1**        1st HC, L.L.C. (HC) appeals the trial court's order directing sale of property owned by HC and Appellants to Seven Jones, L.L.C. (Seven Jones) for $12.5 million.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        In March 2015, Appellants (collectively, Massey) sued to partition a fifty-six-acre parcel of vacant farmland in Mesa (the Property) by sale to extricate his undivided ninety-one-percent ownership interest from the undivided nine-percent interest held by HC.  The trial court found Massey was entitled to partition, ordered the Property sold, and, in January 2016, appointed a real estate commissioner (the Commissioner) to facilitate the sale.  The Commissioner prepared a market analysis report valuing the Property at $11.5 million for a "quick, all cash investor sale," or between $15.8 and $17 million for a "blue sky, aggressive developer" with a longer escrow, more contingencies, and more risk.  The Property was appraised for $11.3 million in April 2016.

**¶3**        Around this same time, Seven Jones made an unsolicited offer to purchase the Property for $12.5 million.  Noting the offer was higher than both the market analysis and the appraisal price, involved a willing buyer with confirmed financing, and contained no risky contingencies, the Commissioner recommended the trial court approve the offer.  The Commissioner and Massey requested the court expedite its review of the transaction given concerns from Seven Jones "regarding the timing constraints of a 1031 exchange."  *See generally* 26 U.S.C. § 1031[1] (permitting an investor to defer capital gains tax where "property held for productive use in a trade or business or for investment" is exchanged for similar

---

[1]        Absent material changes from the relevant date, we cite a statute's current version.

property within a specific timeframe). HC objected to the sale price and requested the property be partitioned in-kind instead.

¶4 In August 2016, the trial court held a hearing "to determine the conditions upon which the subject property will be marketed and sold." Massey testified he received an offer to sell the Property for $17 million in 2015, but HC would not agree to the sale, prompting the filing of the partition action. Massey also said he had been trying, unsuccessfully, to sell the Property for thirteen years and urged the court to approve the sale to Seven Jones without further delay. The Commissioner agreed Seven Jones's offer was "probably the best offer we're going to get" and further marketing would be futile.

¶5 HC finally admitted the Property should be sold but opposed the sale to Seven Jones in light of a competing expert appraisal valuing the Property at $18.3 million. HC requested the court order the Property be listed for a reasonable period to better determine its true value.

¶6 After taking the matter under advisement, the trial court found HC's valuation "not credible" and approved the sale to Seven Jones. The court also found HC acted unreasonably during the proceedings and awarded Massey his attorneys' fees. HC timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1), -2101(A)(1) and (7).

## DISCUSSION

### I. Sale of the Property

¶7 HC argues the trial court erred in approving the sale of the Property to Seven Jones. Under Arizona law, once it is determined a property subject to partition is incapable of fair division, the court may direct it be sold. A.R.S. § 12-1218. We review an order directing the sale of property subject to partition for an abuse of discretion. *See Cuprite Mine Partners L.L.C. v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015) (applying an abuse of discretion standard when reviewing a sale conducted pursuant to A.R.S. § 12-1218). Additionally, "[w]e defer to the trial court with respect to any factual findings explicitly or implicitly made, affirming them so long as they are not clearly erroneous, even if substantial conflicting evidence exists." *John C. Lincoln Hosp. & Health Corp. v. Maricopa Cty.*, 208 Ariz. 532, 537, ¶ 10 (App. 2004) (citing *Twin City Fire Ins. v. Burke*, 204 Ariz. 251, 254, ¶ 10 (2003), and *Kocher v. Ariz. Dep't of Revenue*, 206 Ariz. 480, 482, ¶ 9 (App. 2003)). "We do not reweigh the evidence or determine the credibility of

witnesses." *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 92, ¶ 36 (App. 1998) (citing *Godwin v. Farmers Ins. of Am.*, 129 Ariz. 416, 419 (App. 1981)).

### A.    Bona Fide Sale

**¶8**       HC first argues the sale to Seven Jones was not "a bona fide sale" because there was "no evidence of true negotiation with Seven Jones." HC also suggests it was improperly deprived of its interest in the Property because it did not participate in the negotiations.

**¶9**       Pursuant to the court's January 2016 order, a bona fide offer is "an offer from a qualified purchaser presenting commercially reasonable terms." The record reflects that Seven Jones did not know Massey when it approached him about purchasing the Property. Seven Jones, an experienced and sophisticated commercial developer, then independently analyzed the value of the Property and made an offer at the highest price it was willing to pay. Massey's attempts at negotiating a higher price were unsuccessful. Where there was no room for negotiation within the transaction, Massey's efforts, and HC's participation, or lack thereof, were irrelevant; the arms-length offer of Seven Jones was as good as it was going to get. Additionally, the court found the purchase price to be in excess of the fair market value of the Property and the balance of the terms effecting the sale to be commercially reasonable — findings with ample support in the record.

**¶10**       HC cites no authority indicating it had a right to personally discuss the details of an unsolicited offer to purchase property subject to a partition action where the transaction is otherwise fair and reasonable, and we find none. *See McCready v. McCready*, 168 Ariz. 1, 3 (App. 1991) ("The fundamental objective in a partition action is to divide the property so as to be fair and equitable and confer no unfair advantage on any of the cotenants.") (quoting *Frame v. Frame*, 740 P.2d 655, 658 (Mont. 1987), and citing 59A Am. Jur. 2d *Partition* § 6 (1987)). We therefore find no support for HC's suggestion that the sale to Seven Jones was unfairly beneficial to Massey.

### B.    Listing of the Property

**¶11**       HC also argues the trial court erred in approving a sale that did not "maximize[] both parties' interests in the proceeds." Although HC argues the value could only have been maximized through "exposure to an open market," the court found otherwise here. Indeed, the court found "no evidence that listing the Property for sale or marketing the Property further will more likely than not lead to a purchase offer with a higher price and/or

more favorable terms" and therefore "further marketing of the Property would not benefit the parties." Implicit within these findings is the conclusion that the Seven Jones offer reflected the best possible price that could be obtained for the Property. These findings are supported by testimony from Massey and the Commissioner and the April 2016 appraisal.[2] Although HC challenged that testimony and presented a competing appraisal, the court rejected HC's arguments and found its expert's appraisal not credible. We do not reweigh conflicting evidence, *see supra* ¶ 7, and, on this record, find no error.

**¶12** HC also argues that A.R.S. § 12-1218(C), which directs a commissioner be appointed "to sell the real property in the time and manner, and after notice, as directed by the court," implies "*public* notice and the opportunity for competitive bidding." We disagree. First, if the legislature had meant to specifically require public notice and competitive bidding, it knew how to do so. *See, e.g.*, A.R.S. § 12-1191 (providing specific notice requirements); A.R.S. § 38-431.02 (setting forth public notice requirements); A.R.S. § 41-2533 (providing competitive bidding requirements). It chose not to do so here, and the lack of public notice or competitive bidding requirements within A.R.S. § 12-1218(C) is dispositive. *See Wright v. Gates*, 243 Ariz. 118, 122, ¶ 17 (2017). Second, when considered in the context of the partition statutes, and particularly A.R.S. § 12-1219 (directing the court to hold a hearing on objections to the commissioner's report), the phrase "after notice" simply indicates *the parties* should be given an opportunity to comment on the "time and manner" in which the property will be sold. This is precisely what occurred here, and we find no error.

**¶13** Finally, HC argues the trial court erred in disregarding its initial January 2016 order directing the property be listed for sale. That

---

[2] HC acknowledges the circumstances surrounding the sale of property "necessarily affects its worth," *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 548 (1994), but argues it is error to conclude a sale resulting from this partition action would be a "'forced' sale that would command a low sale price." We need not address this contention because, although the trial court judge suggested at the close of evidence that the sale could "in the context of a partition action . . . be characterized as a forced sale" and result in a lower sale price, the court did not incorporate that reasoning in its final order. Moreover, this analysis is not necessary to sustain the ultimate conclusion that further marketing would be futile.

order, which outlined the procedure and responsibilities attendant to the appointment of the Commissioner, states:

> The subject real property shall be listed for sale in a commercially reasonable manner at the value estimated by the market analysis or, if applicable, at the appraised value.

The order, however, contemplates that the listing would occur after the appraisal was complete. Here, Seven Jones' unsolicited offer was made almost simultaneously with the completion of the appraisal. This offer triggered other provisions of the order, including the direction that "[t]he parties shall consider all written offers for purchase of the subject real property," and that the Commissioner "may petition the Court for an emergency or accelerated hearing and for acceptance of the offer" if a written offer to purchase is rejected. And ultimately, the property subject to partition is to be sold "in the time and manner . . . directed by the court." A.R.S. § 12-1218(C).

¶14        Although the court may have initially contemplated that the Property be listed, the situation changed rapidly and, apparently, fortuitously. In light of the court's subsequent finding that listing the property would not create additional value for the parties beyond what Seven Jones had offered, *see supra* ¶ 11, we cannot say the court erred by exercising the discretionary authority granted to it by A.R.S. § 12-1218 in a way that took advantage of Seven Jones' existing and otherwise fair offer. *See Cuprite*, 809 F.3d at 553-54 (concluding the acceptance of an existing offer was "a reasonable way . . . to structure the partition sale" where the opposing party's suggestion that auctioning the property would bring greater value was speculative). The court was not thereafter bound to the limitations of its own prior order or required to perform what it perceived, based upon changed circumstances, to be the futile act of proceeding with the marketing of the Property. *See Coronado Co. v. Jacome's Dep't Store, Inc.*, 129 Ariz. 137, 140 (App. 1981) ("The law does not require a futile act.") (citing *Kammert Bros. Enters. v. Tanque Verde Plaza Co.*, 102 Ariz. 301, 306 (1967)).

### C.        Purchase Option

¶15        HC argues the trial court erred by denying HC an option to purchase the Property on better terms than those offered by Seven Jones. However, HC was specifically authorized to make a written purchase offer in the court's January 2016 order but did not do so; nor did it identify this issue within its pretrial statement or advance the argument at the August

2016 hearing. Arguments not properly or timely presented to the trial court for its consideration are waived, and we will not consider them. *Turtle Rock III Homeowners Ass'n v. Fisher*, 243 Ariz. 294, 296, ¶ 9 (App. 2017) (quoting *Odom v. Farmers Ins. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007)).

## II. Attorneys' Fees

**¶16** HC argues the trial court erred in ordering HC to pay Massey's attorneys' fees as a sanction for its unreasonable behavior. Whether the court had the authority to award attorneys' fees presents a question of law we review *de novo*. *Rogone v. Correia*, 236 Ariz. 43, 50, ¶ 23 (App. 2014) (citing *City of Casa Grande v. Ariz. Water Co.*, 199 Ariz. 547, 555, ¶ 27 (App. 2001). The court's discretionary decision to award fees is reviewed for an abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 351, ¶ 32 (App. 1998) (citing *Thomas v. Thomas*, 142 Ariz. 386, 393 (App. 1984)).

**¶17** While "[i]t is generally accepted . . . that attorneys' fees are not recoverable . . . unless specifically provided for by statute or by an agreement between the parties," our supreme court has identified the imposition of sanctions as "[a] noteworthy exception to this rule." *Taylor v. S. Pac. Transp. Co.*, 130 Ariz. 516, 523 (1981). Moreover, here, the trial court imposed sanctions in accordance with its January 2016 order, which advised the parties: "The Court shall impose sanctions against the party having unreasonably withheld approval of sale," or otherwise exhibiting "unreasonable behavior, including but not limited to . . . an award of attorney's fees." From this language, it is abundantly clear that the court intended to invoke the standards set forth in A.R.S. § 12-349(A), which authorizes an award of attorneys' fees against a party to a civil action who "[b]rings or defends a claim without substantial justification" or "[u]nreasonably expands or delays the proceedings." Accordingly, we reject HC's contention that it did not know sanctions could be imposed upon the basis of a party's unreasonable conduct and conclude the court had authority to do just that.

**¶18** To justify sanctions against a party for its unreasonable conduct, the trial court must make specific findings justifying the award, though they "need only be specific enough to allow a reviewing court to test the validity of the judgment." *Rogone*, 236 Ariz. at 50, ¶ 22 (citing A.R.S. § 12-350, and *Bennett v. Baxter Grp.*, 223 Ariz. 414, 421, ¶ 28 (App. 2010)). To support the award here, the court found:

[HC] has unreasonably withheld approval of the sale of the Property and has otherwise acted unreasonably in this proceeding. [HC] filed its Answer claiming that the Property should be divided and not sold, resisted Plaintiff's Motion for Summary Judgment on the same ground, and served its Initial Disclosure Statement under the theory that the Property should be equitably divided. When provided with an opportunity to submit evidence that division was appropriate, [HC], after resisting sale for 15 months, submitted no evidence that would support an equitable division of the Property and instead agreed that the Property should be sold.

. . .

[HC] further acted unreasonably by refusing to provide information to the Special Commissioner regarding [its] opinion of value, and by attempting to delay consideration of the Seven Jones offer when [HC] admits that sale is appropriate.

¶19            HC argues that it "has always been open to selling the Property . . . if the price and terms are right." But the record supports the trial court's findings that HC maintained its position that the sale was not an appropriate remedy throughout the proceedings (only to abandon the position at the hearing) and that HC was not cooperative with the Commissioner. The record also indicates HC rejected an amended offer from Seven Jones that would have netted it nine percent of the higher, $18.3 million price tag placed upon the Property by its own expert (with the greater amount to HC partially offset by contributions from Massey), suggesting that no price would have been high enough and HC intended to blindly pursue its partition in-kind defense. On this evidence, we cannot say the findings are clearly erroneous. Because they support imposition of a discretionary award of fees, HC has failed to prove error.

**CONCLUSION**

**¶20**        The trial court's orders are affirmed.

**¶21**        Massey requests an award of attorneys' fees and costs incurred on appeal pursuant to A.R.S. § 12-349(A).  Although we affirm the trial court's sanction against HC, we cannot say its appeal is entirely frivolous, and deny Massey's request.  However, as the successful party, Massey is awarded his reasonable costs incurred on appeal upon compliance with ARCAP 21(b).