IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

ARIZONA REPUBLICAN PARTY, *Plaintiff/Appellant*,

*v.*

STEPHEN RICHER, as Maricopa County Recorder; and the
MARICOPA COUNTY BOARD OF SUPERVISORS, by and through,
CLINT HICKMAN, JACK SELLERS, THOMAS GALVIN,
BILL GATES, STEVE GALLARDO, *Defendants/Appellees.*

ADRIAN FONTES, in his official capacity as Arizona Secretary of State;
ARIZONA DEMOCRATIC PARTY, *Intervenors/Appellees.*[1]

No. 1 CA-CV 21-0201
FILED 7-11-2023

Appeal from the Superior Court in Maricopa County
No. CV2020-014553
The Honorable John R. Hannah, Jr., Judge

**AFFIRMED**

COUNSEL

Wilenchik & Bartness P.C., Phoenix
By Dennis Wilenchik, Lee Miller, John D. Wilenchik
*Counsel for Plaintiff/Appellant*

---

[1]     The caption has been amended to include all parties in this litigation and to reflect the substitution of the public officers currently serving in the capacities listed.  *See* ARCAP 27(c)(2).

Maricopa County Attorney's Office, Civil Services Division, Phoenix
By Thomas P. Liddy, Emily Craiger, Joseph I. Vigil, Joseph J. Branco,
Joseph E. LaRue
*Counsel for Defendants/Appellees, Maricopa County Recorder & Maricopa
County Board of Supervisors*

Law Offices of Sherman & Howard L.L.C., Phoenix
By Craig A. Morgan, Shayna Stuart, Jake Tyler Rapp
*Counsel for Intervenor Defendant/Appellee, Arizona Secretary of State*

—————————————————

## OPINION

Judge Michael J. Brown delivered the opinion of the Court, in which
Presiding Judge Randall M. Howe and Judge Brian Y. Furuya joined.

—————————————————

**B R O W N,** Judge:

¶1          The Arizona Republican Party ("ARP") appeals the superior
court's dismissal of its complaint challenging the hand count audit process
Maricopa County used for the 2020 general election.  ARP also challenges
the court's decision to award attorneys' fees in favor of Arizona's Secretary
of State ("Secretary") under A.R.S. § 12-349.  Because ARP has not shown
the court erred in dismissing the complaint or abused its discretion in
awarding fees, we affirm.

## BACKGROUND

¶2          Arizona law requires election authorities from each of the 15
counties to verify the accuracy of electronic vote counts by manually
counting random batches of ballots.  *See* A.R.S. § 16-602(B).  This process,
known as the "hand count audit," starts before election day when the
county elections officer informs the county political party chairs of how
many of the parties' designees will be needed to perform the audit.  A.R.S.
§ 16-602(B)(7).  At least one week before election day, the party chairs name
the individuals who will physically count the ballots.  *Id.*  After the polls
close, the party chairs take turns randomly choosing a few polling places to
be audited.  A.R.S. § 16-602(B)(1).  The party chairs also select the races to
be audited, except that the presidential race is always included.  A.R.S.
§ 16-602(B)(2), (5).

**¶3**        If the hand count audit reveals evidence that the machine tabulation may have been inaccurate, the audit expands in stages.  A.R.S. § 16-602(C).  But if the initial audit matches the machine result for a given race, "the results of the electronic tabulation constitute the official count for that race."  *Id.*   Regardless, the audit must be completed before the canvassing of a county's election results.  A.R.S. § 16-602(I).

**¶4**        The statutory provision at issue, A.R.S. § 16-602 (addressing selection of polling places for the hand count audit), reflects the longstanding practice of organizing elections based on precincts.  When that practice is followed, a county's board of supervisors establishes "a convenient number" of precincts before each election and then designates one polling place in each precinct for the voters who reside in that precinct.  A.R.S. § 16-411(A), (B).  Consistent with that approach, § 16-411(B) refers to sampling of "precincts."

**¶5**        In 2011, however, the legislature amended § 16-411 to authorize "the use of *voting centers* in place of or in addition to specifically designated polling places."  2011 Ariz. Sess. Laws. ch. 331, § 3 (1st Reg. Sess.) (H.B. 2303) (emphasis added).   The legislature also amended § 16-602(B) to require that the "hand count shall be conducted as prescribed by this section and in accordance with hand count procedures established by the secretary of state in the official instructions and procedures manual ["EPM"] adopted pursuant to § 16-452."  2011 Ariz. Sess. Laws. ch. 331, § 8 (1st Reg. Sess.) (H.B. 2303); *see* Ariz. Sec'y of State, 2019 Elections Procedures Manual ("2019 EPM") (Dec. 2019).   But the legislature did not change the procedures in § 16-602(B)(1), which outlines what each county must do in conducting a hand count, including the requirement that "[a]t least two percent of the *precincts* in that county, or two *precincts*, whichever is greater, shall be selected at random from a pool consisting of every *precinct* in that county."  (Emphasis added.)

**¶6**        The 2012 and 2014 versions of the EPM included a provision covering hand count auditing procedures that allowed counties using vote centers to treat them as precincts for purposes of the audit.  In 2019, the Secretary adopted the version of the EPM at issue, which likewise allows "counties that utilize vote centers" to consider "each vote center . . . to be a precinct/polling location and the officer in charge of elections must conduct a hand count of regular ballots from at least 2% of the vote centers, or 2 vote centers, whichever is greater."  2019 EPM, at 215.  As required by A.R.S. § 16-452(B), the 2019 EPM was approved by the governor and the attorney general.

¶7 As stated by the legislature, the purpose of the EPM is to "achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting, and of producing, distributing, collecting, counting, tabulating and storing ballots." A.R.S. § 16-452(A). And as recognized by our supreme court, the "EPM has the force of law; any violation of an EPM rule is punishable as a class two misdemeanor." *Ariz. Pub. Integrity All. v. Fontes*, 250 Ariz. 58, 63, ¶ 16 (2020). But if an EPM provision conflicts with a statute, that provision is unenforceable. *Leach v. Hobbs*, 250 Ariz. 572, 576, ¶ 21 (2021).

¶8 On September 16, 2020, the Maricopa County Board of Supervisors ("Board") announced it would be using vote centers for the November 3, 2020 general election. The day after the polls closed, the "Maricopa County Chairs" of the Republican, Democratic, and Libertarian parties met to select the vote centers and early ballots subject to auditing. The physical hand count, which audited 2,917 ballots cast on voting machines and more than 5,000 ballots cast through mail-in ballots, started on Saturday, November 7 and concluded on Monday, November 9. The hand count audit showed that "[n]o discrepancies were found."

¶9 On November 12, ARP sued the Maricopa County Recorder and the Board (collectively "County"). The complaint sought an order declaring that certain provisions of the 2019 EPM addressing hand counts conflict with state statutes. ARP also requested mandamus relief directing the County to conduct a hand count of the election results "in strict accordance" with § 16-602(B)(1), which requires a sampling of two percent of "precincts," not "vote centers." At the same time, ARP applied for an order to show cause, alleging that conducting a hand count based on precincts would result "in a different method of data analysis that is certain to produce different results." ARP asserted that

> if precincts are sampled instead of voting centers, then the data is much easier for [ARP] and/or members of the public to cross-reference or cross-check with other voter registration data, since voter registration data is already "sortable" by precinct (but not by "vote center"). In other words, whatever hardship *vel non* it may cause to the county to sample precincts instead of vote centers, such hardship is vastly outweighed by the benefit to the public in being able to analyze and sort (and organize, process) the sampling data, thereby creating transparency to the public and confidence in the integrity of our elections, which is clearly the point to this statute to begin with (and which has clearly taken on a special

and obvious importance in this election, which cannot be understated).

¶10 On November 13, the Secretary and the Arizona Democratic Party moved to intervene as defendants. The next business day, the court held a show cause hearing and later that day issued a minute entry granting the motions to intervene and setting expedited briefing deadlines for all pending matters, including a potential request for injunctive relief from ARP.

¶11 The Secretary, the County, and the Democratic Party separately moved for dismissal. The Secretary argued in part that (1) ARP's lawsuit was barred by laches; (2) ARP was wrong as a matter of law because § 16-602(B) is silent on the procedures for counties that use vote centers and it expressly authorizes the Secretary to fill that gap; (3) the lawsuit suffered from procedural defects, including failure to request injunctive relief postponing the official canvass, which had to be completed no later than November 23; and (4) ballots would be treated arbitrarily because several other counties used vote centers to perform their hand count audits.

¶12 Addressing laches, the Secretary argued ARP had known for "nearly a decade" that the EPM authorizes hand count audits based on samples from vote centers, and the County followed that process in the March 2020 presidential preference election and the August 2020 primary election. Yet, ARP raised no challenge to the procedure the EPM authorized until after the County had completed the hand count for the 2020 general election, causing prejudice to the Secretary, the County, and "Arizona voters, who deserve finality." The Secretary requested attorneys' fees under § 12-349, which mandates a fee award if a claim is brought, among other reasons, "without substantial justification."

¶13 After outlining the procedures and results of the hand count audit, and attaching a copy of the audit report, the County argued ARP had no basis to claim it was unaware that its county chair had participated in the audit, because no later than November 11, it had received a copy of the report in a different lawsuit. The County argued that ARP participated— through its county chair—in the process to select vote centers instead of precincts, and that the county chair's participation in the hand count audit "shows [ARP's] unreasonable delay without justification."

¶14 The Democratic Party urged dismissal on similar grounds and referred to a November 12 letter from the Arizona Attorney General's office to Republican legislative leaders in response to "a number of

inquiries regarding the scope and nature of the manual hand count audit" given the County's use of voting centers. Providing initial thoughts on the issue, the letter stated in part:

> Some have asserted that the audit should be conducted only using precincts . . . . The statute [§ 16-602], however, is <u>silent</u> on how the hand count audit should be conducted when voting centers are used. Instead, the statute directs the Secretary of State to fill in that gap and establish additional hand count procedures with the approval of the Governor and Attorney General, which was done in 2019.

¶15 In its four-page response covering all three motions to dismiss, ARP briefly addressed its argument that the County failed to conduct the hand count in accordance with § 16-602(B). The majority of the response focused on ARP's position that the delay in filing the suit was not unreasonable because there had never been a "real case or controversy" over the hand count procedure until the 2020 general election cycle and that no prejudice existed for the other parties because there was "plenty of time" to issue the canvass.

¶16 ARP also applied for a preliminary injunction to enjoin the Board from certifying the results of the votes and issuing an official canvass until the merits of the complaint could be litigated. After outlining its legal reasoning that a new hand count was required, ARP asserted:

> Given the importance of this election, and of doing everything with respect to this election "by the book," there are also powerful public-policy reasons to grant this preliminary injunction. If an injunction is not granted, *then there will be lingering questions about the legitimacy of [the election] results* which could otherwise be answered through a proper hand count. This is also the basic prejudice that [ARP] and the voting public will suffer if the Court declines to grant an injunction – *it will create a cloud over the legitimacy of this election and its results.*

(Emphasis added.)

¶17 Following a one-hour oral argument held on November 18, the superior court issued a minute entry denying the request for preliminary injunction and dismissing ARP's complaint with prejudice. The court stated that a more detailed ruling would follow and set a deadline

by which the Secretary could submit a motion for attorneys' fees under § 12-349.

¶18 In applying for fees, the Secretary outlined many reasons in support of the assertion that ARP's claim was groundless, including that the challenged EPM provision had been "on the books for nearly a decade" and ARP had not objected to it in previous elections, and that ARP failed to timely seek injunctive relief. The Secretary also argued the claim was made in bad faith, asserting ARP's motives in filing the suit were to "delay final election results and sow doubt about the integrity of Arizona's elections system."

¶19 The superior court issued a detailed ruling addressing the merits of ARP's case. The court found that ARP's request for declaratory relief could not succeed because of ARP's unreasonable delay in pursuing the claim. The court also concluded that ARP had no claim for mandamus relief because County election officials followed the 2019 EPM and they lacked discretion to vary from it when performing the hand count.

¶20 Responding to the Secretary's fee application, as well as addressing the court's merits ruling, ARP argued in part that its lawsuit was justified because it hinged on the plain language of § 16-602(B), and that because the 2019 EPM conflicts with the statute, the statute must control. ARP also asserted it was unaware the hand count had already occurred because the hand count results had not yet been published on the Secretary's website, and the County was still counting votes when the complaint was filed. ARP asserted its claims were not brought in bad faith because it did not initially seek to delay the canvass until becoming aware that the County intended to certify it, which the Secretary argued would have made its claims moot. ARP also asserted that by "even contemplating" awarding attorneys' fees the court would be "close to engaging in very serious interference with the First Amendment right to petition government for a redress of grievances." *See* U.S. Const. amend. I.

¶21 In another detailed ruling, the court granted the Secretary's fee request for attorneys' fees under § 12-349, ordering ARP and its counsel to pay the $18,237.59 award, jointly and severally. ARP timely appealed, and we have jurisdiction under A.R.S. § 12-120.21(A)(1).

¶22 After briefing in this appeal was complete, ARP moved to stay the appeal and revest jurisdiction in the superior court to allow ARP to move to disqualify the judge who decided this case, based on newly discovered evidence of alleged bias and prejudice. We granted ARP's

motion to stay the appeal. After a different judge denied the motion to disqualify in the superior court, ARP unsuccessfully sought special action relief in this court. ARP did not seek to amend the notice of appeal to include the superior court's order denying its motion to disqualify. Thus, that ruling is not at issue in this appeal.

## DISCUSSION

¶23 Broadly stated, ARP argues the superior court erred by (1) rejecting the merits of its claim that state law requires hand counts to be conducted based on precincts, not vote centers; and (2) awarding attorneys' fees under § 12-349 on the grounds that ARP's lawsuit was brought without substantial justification. As an initial matter, we address two procedural factors that impact our resolution of these issues.

¶24 First, rather than summarizing the relevant facts and procedural history in the "statement of facts" section of its opening brief, ARP includes numerous reasons it believes the court's rulings were improper. This tactic violates our appellate rules and needlessly injects uncertainty into the briefing process by leaving opposing counsel and this court to sort through a muddled presentation to discern what arguments have been fairly presented. *See* ARCAP 13 (outlining how appellate briefs should be organized and what content is appropriate in each section). We could justifiably ignore each of the "arguments" that ARP improperly embedded in its statement of facts section; however, in our discretion we have considered all assertions of error.

¶25 Second, ARP has not provided transcripts of the show cause hearing or the oral arguments held in the superior court. *See Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995) ("A party is responsible for making certain the record on appeal contains all transcripts or other documents necessary for us to consider the issues raised on appeal."); *see also* ARCAP 11(c) (explaining the appellant's duty to order transcripts). Without such transcripts, we generally presume that the matters discussed at those hearings support the court's rulings. *See Baker*, 183 Ariz. at 73 ("When a party fails to include necessary items, we assume they would support the court's findings and conclusions."). We recognize that in some instances, transcripts of hearings involving primarily procedural matters or oral arguments on pending motions might not be "necessary" for our consideration of an appeal. But for certain matters, such as the § 12-349 fee award before us, statements made by counsel and the court during non-evidentiary hearings may be particularly relevant to our analysis, as shown below.

## I.  Dismissal of Claim for Declaratory Relief

**¶26**        ARP argues the superior court erred in dismissing its claim for declaratory relief, which sought a ruling that the hand count sampling must be based on "precincts," under the "plain language" of § 16-602.  We review de novo the grant of a motion to dismiss for failure to state a claim. *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8 (2012).  We "assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient."  *Id.* at ¶ 9.

**¶27**        The superior court dismissed ARP's claim for declaratory relief on several grounds, including laches.  "In the context of election matters, the laches doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable delay prejudices the opposing party or the administration of justice."  *Lubin v. Thomas*, 213 Ariz. 496, 497, ¶ 10 (2006); *see also League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, 558, ¶ 6 (2009) ("Laches will generally bar a claim when the delay [in filing suit] is unreasonable and results in prejudice to the opposing party.").

**¶28**        The superior court found that ARP unreasonably delayed pursuing its claim because it could have been filed much earlier.  For example, ARP could have filed its claim earlier the same year in connection with the 2020 presidential preference and primary elections, or when the Board passed the resolution authorizing vote centers on September 16, 2020.  Instead, ARP "waited until after the election, after the statutory deadline for commencing the hand count audit, and (as it turned out) *after the completion of the audit*."  The court found that ARP failed to acknowledge the prejudice to the County caused by the delay, including the tax dollars spent in conducting another audit under tight deadlines and disrupting an orderly administration of the election.

**¶29**        ARP contends that dismissal of its claim for declaratory relief was wrong because the court ignored the language of § 16-602(B).  But in its opening brief, ARP states that it is not appealing the court's laches ruling.  Even if that statement does not reflect explicit waiver, ARP makes no attempt to challenge the court's detailed analysis supporting the conclusion that the request for declaratory relief "was way too late."  Thus, ARP has waived any challenge to the court's laches ruling.  *See State v. Carver*, 160 Ariz. 167, 175 (1989) (explaining that failure to "present significant arguments, supported by authority," in an opening brief on a particular claim usually results in waiver).

**¶30**        Nonetheless, in its reply brief ARP asserts that the Secretary and the County misconstrued ARP's failure to address laches in the opening brief.  According to ARP, the declaratory relief claim "is not even rationally susceptible to a 'laches' argument—the statute still says what it says, and there is no conceivable prejudice to talking about it now as opposed to months from now."  We generally do not consider arguments raised for the first time in a reply brief.  *See Dawson v. Withycombe*, 216 Ariz. 84, 111, ¶ 91 (App. 2007).  Even so, ARP does not inform us where this argument was raised in the superior court.  *See BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, 594–95, ¶ 25 (App. 2021) (explaining that arguments not presented to the trial court are waived on appeal).  Nor does ARP point to any portion of the record suggesting that it conveyed to the court a desire to continue pursuit of the declaratory judgment claim as guidance for *future* elections.  Instead, the court explained its understanding of ARP's claim:

> It is telling that [ARP] lost interest in the declaratory judgment claim, and pivoted instead to the request for an injunction to stop the certification of the election and the canvass of the results, as soon as the defendants made clear that the hand count audit has been completed.  [ARP] could have pursued the declaratory judgment claim to determine how to audit future voting center elections.  That it did not do so demonstrates that its real interest was not the audit procedure as such.

**¶31**        On appeal, ARP does not challenge the court's reasoning that it apparently had no interest, for future elections, in litigating its claim that the 2019 EPM's hand count provision for vote centers is invalid because it conflicts with § 16-602(B).  Thus, ARP has waived any argument that the court erred in dismissing its claim for declaratory relief.  Similarly, ARP has waived any claim that the court erred in dismissing its claim for mandamus relief and denying the request for a preliminary injunction because ARP presents no challenges to those rulings in its opening brief.  *See Carver*, 160 Ariz. at 175.

## II.        Award of Attorneys' Fees

**¶32**        "Except as otherwise provided by and not inconsistent with another statute," in any civil action a court "shall assess reasonable attorney fees" when an attorney or party "brings or defends a claim without substantial justification," which means "that the claim or defense is groundless and is not made in good faith."  A.R.S. § 12-349(A)(1), (F).  A fee award under § 12-349 must be supported by a preponderance of the

evidence. *See Phx. Newspapers, Inc. v. Dep't of Corr.*, 188 Ariz. 237, 244 (App. 1997) (construing an earlier, similar, version of § 12-349). We review the court's application of § 12-349 de novo, but we view the evidence in a manner most favorable to sustaining the decision, and we will affirm unless the court's findings are clearly erroneous. *Id.* at 243–44.

**¶33** When awarding fees, a trial court "shall set forth the specific reasons for the award" and may consider various factors, A.R.S. § 12-350, but "the findings need only be specific enough to allow a reviewing court to test the validity of the judgment," *Rogone v. Correia*, 236 Ariz. 43, 50, ¶ 22 (App. 2014). The following § 12-350 factors are relevant here: (1) the extent of efforts to determine a claim's validity before it was asserted; (2) the extent of post-filing efforts to eliminate invalid claims; (3) the availability of facts to help determine the validity of a claim; (4) "whether the action was prosecuted . . . , in whole or in part, in bad faith"; and (5) the extent to which the party prevailed. *See* A.R.S. § 12-350(1)–(3), (5), (7).

**¶34** In addressing ARP's challenge to the superior court's fee ruling, we note that the two § 12-349 elements (groundless, lack of good faith) are not easily distinguishable, and other cases often analyze them jointly. We believe the better approach is to provide separate analysis, but we also recognize some overlap will exist given the breadth of each element.

## A. Groundless Determination

**¶35** Whether a claim is groundless involves an objective determination. *Rogone*, 236 Ariz. at 50, ¶ 22. A claim is groundless if the proponent is unable to present any rational argument, based on the law or the evidence, supporting the claim. *Id.*

**¶36** In awarding fees to the Secretary under § 12-349, the court explained that it had "considered only those facts and circumstances" that both ARP and its counsel "have had a fair opportunity to address, either during the litigation on the merits or in response to [the Secretary's] fee application." The court then stated, for several reasons, that ARP's claim was groundless.

**¶37** First, the court found that "the relief sought was not legally available from the parties that were sued at the time the suit was filed. The other parties pointed out these procedural defects in their motions to dismiss, but [ARP]'s response to the motions barely addressed them." Until ARP filed its lawsuit, it never objected to using vote centers or raised any issue about the hand count audit that would occur as part of the 2020

general election even though the County used the same procedure twice in elections held earlier that year.  As noted, ARP has not challenged the court's laches finding.  Thus, ARP's inability to offer any viable legal rationale for waiting until after the 2020 election procedures were established, much less after the hand count audit was completed, supports the court's finding that ARP's attempt to require Maricopa County to perform a new audit was groundless.

¶38            Second, the court reasoned that even if it could have reasonably overlooked the laches problem as a matter of equity, election- law principles "unambiguously barred the claim after the election."  ARP argues that its claim based on the alleged conflict between the 2019 EPM and § 16-602 was not groundless.  However, the context and timing of a lawsuit challenging election procedures is critical.  As the court explained, for decades Arizona courts have applied the principle that "if parties allow an election to proceed in violation of the law which prescribes the manner in which it shall be held, they may not, after the people have voted, then question the procedure."  *Kerby v. Griffin*, 48 Ariz. 434, 444 (1936); *see also Sherman v. City of Tempe*, 202 Ariz. 339, 342, ¶ 9 (2002) (stating that challenges for procedural violations must be brought before the election); *Tilson v. Mofford*, 153 Ariz. 468, 470 (1987) (holding that "procedures leading up to an election cannot be questioned after the people have voted, but . . . *must* be challenged before the election is held").

¶39            ARP argues the superior court's cited authority, *see, e.g.*, *Tilson*, 153 Ariz. at 470, is irrelevant because those cases involved election contests holding that pre-election procedures must be challenged before an election.  Thus, ARP seems to suggest that because an audit happens "after the election," ARP could delay challenging any aspect of the hand count until after it is completed.  We reject ARP's assertion that the hand count audit occurs only *after* the election.  Hand count procedures start no later than two weeks before election day, when the county official informs the county political party chairs how many of their respective members are needed to serve on the "Hand Count Boards."  *See* 2019 EPM, at 213.  Party chairs "must" designate their members at least seven days before election day.  *Id.*  The procedures continue until the County completes the audit report, in this case, on November 9, 2020.

¶40            We also disagree with ARP's contention that the superior court misapplied the law governing election challenges.  The procedures of an election are set forth in detail in statutes and the EPM.  *See generally* A.R.S. §§ 16-400 to -678; 2019 EPM.  As the court explained, ARP's allegation of a "procedural violation" of election laws (utilizing vote centers for hand

count audit) "resulted directly from pre-election decisions that were known, or should have been known," to ARP. Those decisions included the adoption and implementation of election procedures governing hand count audits. *Supra* ¶¶ 6, 8. Notwithstanding those events, ARP waited to challenge the hand count procedure the EPM authorized until after the County had conducted its hand count, which supports the court's conclusion that the time for testing whether the County's procedure complied with the law was "before the election."

¶41        The court also rejected ARP's assertion that "every election is subject to being investigated, audited in strict accordance with the law, and challenged for falsity" after the fact through an election contest. Citing *Findley v. Sorenson*, 35 Ariz. 265, 269 (1929), the court explained that an election challenge based on a procedural statute states a cause of action only if the plaintiff alleges that fraud has occurred or that the result would have been different had proper procedures been followed. *Id.* ("[H]onest mistakes or mere omissions on the part of the election officers, or irregularities in directory matters, even though gross, if not fraudulent, will not void an election, unless they affect the result, or at least render it uncertain."). The court added:

> To say as [ARP] does that this case was "about auditing
> results, which by definition is simply checking them to ensure
> voter confidence and integrity,". . . and that fraud was "not
> germane to the case,". . . is to say that there was no colorable
> cause of action in the first place.

ARP has cited no authority suggesting that a specific election procedure, which the aggrieved party is or should be aware of, may be properly challenged as unlawful *after* an election. Instead, as the superior court properly concluded, in the absence of fraud or a specific showing that a different outcome would have occurred, a party lacks a legal basis to file a court action demanding that an alternative election procedure must be performed.

¶42        Third, the court found that ARP failed to address the principle that "a writ of mandamus cannot issue to public officials who have no legal discretion concerning the matter at issue." *See Adams v. Bolin*, 77 Ariz. 316, 322–23 (1954). Applying that rule, County election officials were legally required to follow the 2019 EPM and had no discretion to vary from it for purposes of the hand count. *See Ariz. Pub. Integrity All.*, 250 Ariz. at 61, ¶ 4 ("[W]hen public officials, in the middle of an election, change the law based on their own perceptions of what they think it *should* be, they undermine

public confidence in our democratic system and destroy the integrity of the electoral process."). And as the court had explained earlier, election officials who performed the hand count could have been charged with a crime if they chose to ignore the 2019 EPM. ARP has not challenged these findings.

¶43        Fourth, the court found that ARP's declaratory relief claim was "misdirected" because it sued the wrong party. Without citing authority, ARP argues that it needed to name only the County because if ARP had merely included the Secretary in its lawsuit, then the County would not have been "bound by any judgment or rulings in the case." The County, however, is bound by the statutory election procedures, the EPM, and pertinent case law, the same as any other county. *See id.* at 63, ¶ 16. Thus, ARP provides no reasonable justification for failing to sue the Secretary when one of the express purposes of the lawsuit was to invalidate a portion of the 2019 EPM.

¶44        In sum, ARP was or should have been aware of the well-established principles that the EPM has the force of law, and that the time to challenge election procedures is *before* an election. *See id.*; *see also Sherman*, 202 Ariz. at 342, ¶ 9. ARP makes no reasonable argument that it had any chance of success when it failed to continue pursuit of the declaratory action. If ARP was interested in obtaining a judicial decision on whether hand counts carried out in counties that have decided to use vote centers is legally impermissible, then ARP could have litigated that issue in due course so the issue would be clarified for future elections. As the superior court noted, ARP presumably had no interest in doing so. Thus, the record supports the court's findings that ARP's claims were groundless.

### B.    Bad Faith Determination

¶45        Whether a party or its attorney acted in bad faith in pursuing a claim or defense is a subjective inquiry. *See Rogone*, 236 Ariz. at 50, ¶ 22. The relevant case law has not defined what constitutes bad faith under § 12-349, but rather only "offers illustrations of that standard as the courts have applied it case by case." *City of Sedona v. Devol*, 196 Ariz. 178, 182–83, ¶ 23 (App. 1999).

¶46        The superior court found that ARP's claim was not made in good faith for several reasons. The court explained in part that ARP's claim seemed to presume that sampling by precinct would reveal precincts where the number of votes exceeded the number of registered voters, but the

purpose of the hand count audit is "to assure that the machines are working properly." The court determined there was "no evidence at all of phantom voters or manipulated vote totals or any other wrongdoing that might show up in a 'cross-check' against voter rolls." The court also concluded that ARP's suit was motivated by "political reasons" based on "[p]ublic mistrust," which is an improper purpose. Additionally, the court rejected ARP's attempt to avoid payment of fees by relying on the First Amendment, stating that it "does not give a litigant the right to file and maintain a groundless lawsuit."

¶47    ARP argues that a bad faith inquiry under § 12-349 should be based on the types of conduct that "constitute an 'improper purpose' under the common law in a claim for abuse-of-process." In ARP's view, without this proposed limit judges could "liberally sanction people for holding political views that differ from their own," as it contends happened in this case. The cases ARP cites, *see, e.g.*, *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252 (App. 2004), do not involve attorneys' fees awarded under § 12-349. While ARP's examples of improper purpose could likely constitute grounds for supporting a finding of bad faith in the context of § 12-349, nothing in the text of the statute limits a court's analysis to the examples ARP identifies.

¶48    We are not persuaded by ARP's contention that the superior court awarded fees under § 12-349 primarily for political motives. ARP argues the court was motivated by its own political views about voter fraud, the election, and former President Trump, such that it improperly relied on cases about election contests to "shoehorn in" its desire to make a "political statement." ARP contends the court opined on these issues for no other reason than to "make a political statement that would be read and widely published by media." ARP thus concludes that a finding of bad faith over a "political issue" of "public mistrust" following the November election is not the kind of bad faith contemplated by § 12-349.

¶49    ARP contends that "[d]uring the hearing in this matter, [the judge] went out [of] his way to question what evidence [ARP] had of actual fraud in the election; and in his Ruling on sanctions, he flippantly characterized the public's concern with 'voter fraud' as a 'theory for which no evidence exists.'" ARP's contention reveals its failure to acknowledge the problem it was facing—that the lawsuit was based at least partially on the public's concern about elections in general, rather than focusing on claims reasonably supported by the law.

¶50    ARP also overlooks the court's finding that ARP changed from demanding a "fair election" to wanting "nothing more than a hand

count audit conducted 'completely by the book and in strict accordance with the law.'" And even more significant, ARP ignores its admission, made in response to the Secretary's fee application, that "[p]ublic mistrust following this election motivated this lawsuit." Addressing that admission, the superior court appropriately concluded:

> [ARP] is effectively admitting that the suit was brought primarily for an improper purpose. It is conceding that the method of sampling ballots for the hand count audit is a minor procedural requirement, not a necessary step toward a fair election. It is saying that it filed this lawsuit for political reasons. "Public mistrust" is a political issue, not a legal or factual basis for litigation.

**¶51** ARP argues it never argued or alleged "fraud," but the record shows otherwise. In ARP's response to the motions to dismiss it stated that "perhaps most importantly (and obviously) of all, concern about *potential widespread voter fraud* has taken on a special significance in this general election, warranting a thorough focus on these laws and compelling [ARP] to take action." (Emphasis added.) According to the record provided to us, ARP made claims about protecting the integrity of the election and first invoked the specter of fraud. If the court made comments about fraud at one of the two hearings it conducted, it was ARP's burden to provide transcripts to prove it. Regardless, ARP's concern about who introduced the issue of fraud into the litigation overlooks the court's well-reasoned analysis outlined above that redoing an election procedure requires a party to allege fraud or that the alternative procedure would change the election's outcome.

**¶52** In its rulings, the superior court specifically relied on statements made by ARP's counsel, which presumably occurred during the hearings, as ARP has not asserted the statements were made in any other context. And in its decision on the merits, the court expressly stated that it had "considered the oral arguments of counsel." In addressing whether ARP (1) brought claims for an improper purpose, (2) tried to distance itself from its own arguments, and (3) suggested that the court asked unfair questions about the public policy behind the hand count statute, the court explained: "[ARP] is not characterizing either its litigation posture or the Court's inquiry honestly. *The Court's questions addressed [ARP]'s own arguments.* For [ARP] to suggest otherwise is gaslighting. It evinces a lack of good faith." Because ARP has not supplied transcripts, we presume that the matters raised and debated during the oral arguments support the court's ruling. *See Baker*, 183 Ariz. at 73. Thus, we cannot conclude that

ARP's contentions about the court's perception of those conversations support ARP's view. Furthermore, the court thoroughly explained its reasoning in both the ruling on the merits and the ruling on attorneys' fees.

¶53 Finally, we find no merit in ARP's contention that the First Amendment essentially immunizes a party who challenges election procedures from § 12-349 sanctions. ARP suggests "it may be beneficial" for us "to weigh in on what a finding of 'bad faith' under § 12-349 really requires, and when a judge's formulation of it becomes so erroneous as to violate First Amendment rights." According to ARP, the superior court admitted that it "considers a political belief held by one third of the public, as well as the country's former President, to be mere 'bad faith.'" ARP argues that allowing "such a broad definition of bad faith would violate any rational definition of what is permissible under the First Amendment, and would allow county judges to liberally sanction people for holding political views that differ from their own—which is exactly what the lower-court judge did in this case." The record shows otherwise.

¶54 The superior court issued its fee ruling based on the record before it. Responding to the fee application, ARP took issue with the court's comment (in the merits ruling) that it would be necessary to decide whether ARP brought its case in bad faith "to cast false shadows on the election's legitimacy." ARP asserted that the comment was "at odds" with around "a third of the general population," and "half of the Republican Party in this State, according to polls conducted by NPR, Reuters, and Politico among others."

¶55 ARP contends that the election's "legitimacy" was not an issue properly before the court. But ARP ignores its own filing. In requesting the preliminary injunction, ARP explicitly referenced concerns about the election's legitimacy if the injunction was not granted. *Supra* ¶ 16. Addressing those concerns in the context of the Secretary's fee request, the court stated: "This is why the Court raised the question whether [ARP] brought suit in order to 'cast false shadows on the election's legitimacy.' Undercutting the election's legitimacy by raising 'questions' *is exactly what [ARP] did in this passage*." ARP's assertions about the election's legitimacy, along with its failure to properly acknowledge or address the court's legal analysis on the legal flaws in its case, severely undermine ARP's claim that the superior court's ruling was politically motivated. And ARP cites no authority suggesting that general allegations about public mistrust and the legitimacy of the election, to the extent they could be relevant in a proper election-related lawsuit, provided any legal justification for filing its claims here.

¶56          ARP also asserts that because politically charged election cases "are already hard to file and litigate," judges need to "avoid deliberately becoming a part of the 'political thicket.'"  ARP argues that affirming the fee award in this case would

> endorse this judge's behavior, which only served to inflame and escalate an otherwise straightforward legal issue with his own personal political beliefs; and it only serves to chill lawyers and the public from seeking to raise important issues of obvious public concern in court.  It would turn the courts into just another hostile political forum, where people have every right to fear irrational reprisals from biased judges — even though our courts are designed to be the one place where this does not happen.

For the reasons explained above, as well as those set forth in the superior court's comprehensive rulings addressing the merits and attorneys' fees, we reject ARP's insinuation that the judge was biased and that his rulings were affected by political beliefs.  *See Stagecoach Trails MHC, L.L.C. v. City of Benson*, 232 Ariz. 562, 568, ¶ 21 (App. 2013) (recognizing that judges are presumed to be "free of bias and prejudice," and "judicial rulings alone do not support a finding of bias or partiality without a showing of an extrajudicial source of bias or a deep-seated favoritism" (citation omitted)).

¶57          Further, like the superior court, we are not imposing any new requirement or limitation on the filing of an election-related lawsuit. Instead, as with any lawsuit, claims filed in an election matter are subject to the well-established principles—derived from statutes, rules, and case law—that govern all civil lawsuits in this state.  *See, e.g.*, A.R.S. § 12-349; Ariz. R. Sup. Ct.  42,  ER 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a good faith basis in law and fact . . . ."); *see also King v. Whitmer*, 556 F. Supp. 3d 680, 727 (E.D. Mich. 2021) ("Although the First Amendment may allow [attorneys] to say what they desire on social media, in press conferences, or on television, federal courts are reserved for hearing genuine legal disputes which are well-grounded in fact and law.").

¶58          ARP cites no authority suggesting that courts refrain from holding a party and its attorney accountable for filing lawsuits that lack merit because of First Amendment considerations, and the few cases addressing this topic confirm the opposite view.  The First Amendment does not shield attorneys or parties from a court's obligation under § 12-349 to award attorneys' fees against a party or attorney who brings or defends

a claim without substantial justification. *See Larsen v. Comm'r*, 765 F.2d 939, 941 (9th Cir. 1985) ("The right to petition protected by the First Amendment does not include the right to maintain groundless proceedings."); *see also In re Itel Sec. Litig.*, 791 F.2d 672, 676 (9th Cir. 1986) (rejecting an argument that a court's power to impose sanctions for frivolous litigation is limited by the First Amendment); *King*, 556 F. Supp. 3d at 727; *cf. Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983) ("Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition.") (citations omitted). The court system exists to hear legitimate legal disputes, not for airing political disputes or grievances. *See King*, 556 F. Supp. 3d at 727 ("It is not . . . acceptable to use the federal judiciary as a political forum to satisfy one's political agenda.").

**¶59** ARP has not shown that any of the court's § 12-349 findings are clearly erroneous, or that the court abused its discretion in granting the Secretary's fee request.

## CONCLUSION

**¶60** We affirm the superior court's dismissal of ARP's complaint and application for preliminary injunction, and the court's award of attorneys' fees. The Secretary requests an award of attorneys' fees incurred on appeal under § 12-349, for the same reasons outlined by the superior court. In its reply brief, ARP does not address the fee request. We award reasonable attorneys' fees to the Secretary subject to compliance with ARCAP 21. The award is joint and several against ARP and its counsel.



AMY M. WOOD • Clerk of the Court
FILED: AA