335 P.3d 1122

John ROGONE aka Johnny Rogone, now Bingo Bada Bing; and Jason Rogone, individually and as Successor Co-Trustees of The Alfred Correia and Mary F. Correia Trust, Plaintiffs/Appellees/Cross–Appellants,

v.

Rosira CORREIA aka Rosira A. Correia aka Rosira Shaw aka Rosira A. Henderson aka Rosira Sasser aka Rosira A. Correia Sasser aka Rose Sasser; John K. Sasser aka John Kershner Sasser, individually and as Trustee of the John K. Sasser Estate Trust, dated 9/18/1996; Rosira A. Correia Sasser, Trustee of The Correia Estate Trust, dated 10/31/2003; E Bronco Trail Rental LLC; Hot Springs Holdings LLP, Defendants/Appellants/Cross–Appellees,

Aiken Schenk Hawkins & Ricciardi P.C.; John J. Hebert, Cross–Appellees.

No. 1 CA–CV 13–0375.

Court of Appeals of Arizona, Division 1.

Sept. 25, 2014.

Henman Law Firm, P.C., Phoenix By G. Lee Henman, Jr., Counsel for Plaintiffs/Appellees/Cross–Appellants.

Jaburg & Wilk, P.C., Phoenix By Kathi Mann Sandweiss, Roger L. Cohen, Counsel for Defendants/Appellants/Cross–Appellees.

Aiken Schenk Hawkins & Ricciardi P.C., Phoenix By Alfred W. Ricciardi, Robert C. Van Voorhees, Counsel for Cross–Appellee Aiken Schenk Hawkins & Ricciardi P.C.

Judge PETER B. SWANN delivered the opinion of the Court, in which Presiding Judge ANDREW W. GOULD and Judge JON W. THOMPSON joined.

## OPINION

SWANN, Judge.

¶ 1 Rosira Correia Sasser ("Rose") and John K. Sasser ("John"), individually and as the respective trustees of the Correia Estate Trust and the John K. Sasser Estate Trust, together with E Bronco Trail Rental LLC and Hot Springs Holdings LLP (collectively, "the Sassers"), appeal a ruling of the trial court that relied on equitable grounds to deny Rose's assertion of the homestead exemption. Johnny and Jason Rogone (collectively, "the Rogones"), individually and as successor co-trustees of the Alfredo Correia and Mary F. Correia Trust, cross-appeal the court's vacating of a second amended judgment against the Sassers. Both the Sassers and the Rogones appeal the court's order of attorney's fees, and the Sassers further appeal the court's denial of their motion for a new trial on attorney's fees. We affirm the ruling vacating the second amended judgment, affirm the order of attorney's fees, and affirm the denial of a new trial on attorney's

fees. We reverse the ruling denying Rose's assertion of the homestead exemption, and hold that equitable considerations cannot defeat the applicability of the exemption.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In 2004, the Rogones filed suit in California against Rose as then-trustee of the Alfredo Correia and Mary F. Correia Trust. While the California lawsuit was pending, Rose and John completed three property transactions with varying degrees of assistance from an attorney with the law firm now known as Aiken Schenk Hawkins & Ricciardi P.C. ("Aiken Schenk"). First, they transferred property owned as tenants by the entirety and located in Arkansas ("the Hot Springs Property") to John as trustee of the John K. Sasser Estate Trust, forming Hot Springs Holdings LLP in the process. Second, Rose transferred property located in Arizona ("the E. Bronco Trail Property") from the Correia Estate Trust to the newly formed E Bronco Trail Rental LLC, with John as its manager and Hot Springs Holdings LLP as its sole member. Third, Rose and John entered into a postnuptial agreement by which each waived any interest in assets identified as belonging to the other or thereafter acquired by the other.

¶ 3 The Rogones eventually prevailed against Rose in the California lawsuit, registered the judgment in Arizona and sued the Sassers in Arizona to facilitate enforcement of the California judgment. The Arizona lawsuit sought to set aside the above-referenced transactions, alleging that the Sassers had executed them with the intent to hinder, delay and defraud the Rogones in their attempt to collect on the California judgment. The case proceeded to trial at which a different attorney from Aiken Schenk represented the Sassers.

¶ 4 The court agreed with an advisory jury's findings that the Sassers executed all three property transactions with actual intent to delay, hinder or defraud the Rogones. The court set aside the transfer of the E. Bronco Trail Property, ordering Rose to sell it and apply the proceeds to the judgments. The court further ordered John to convey Rose's one-half interest in the Hot Springs Property to the Rogones for them to sell and likewise credit the judgments. The court also set aside Rose and John's postnuptial agreement. The first amended judgment clarified that only the sale proceeds "in excess of any valid statutory homestead" were to be applied to the judgments.

¶ 5 The Rogones sought attorney's fees against the Sassers and Aiken Schenk, jointly and severally. For reasons explained below, the court granted the fee request against the Sassers but not their counsel.

¶ 6 Soon after the court entered judgment in the Arizona lawsuit, Rose moved into the E. Bronco Trail Property and claimed it was thereby exempt from collection as her homestead. Having considered the parties' additional briefing on the topic, the court found that allowing Rose to assert the homestead exemption in the E. Bronco Trail Property would be inequitable, assuming without deciding that she otherwise qualified for the exemption.

¶ 7 The Sassers retained new counsel and moved for a new trial, which the court denied. They also moved to amend the first amended judgment, which the court granted in part and denied in part. The second amended judgment provided that Rose and John would hold the Hot Springs Property as tenants by the entirety and were to find a practical method of sale of the E. Bronco Trail Property. However, the court later concluded that it had erred by voiding the transfer of the Hot Springs Property because the Rogones never requested such relief and because the court lacked authority to declare what interest Rose and John held in the Arkansas property.

¶ 8 The Rogones appealed from the second amended judgment and the Sassers cross-appealed. We suspended the appeal and revested jurisdiction in the trial court to allow the Sassers to move to set aside the second amended judgment based on fraud on the court. The trial court granted that motion and we in turn dismissed the pending appeal. The trial court then entered a third amended judgment, from which the Sassers now appeal and the Rogones cross-appeal.

48

## DISCUSSION

### I. THE COURT DID NOT ABUSE ITS DISCRETION BY SETTING ASIDE THE SECOND AMENDED JUDGMENT.

¶ 9 We first consider the Rogones' argument that the court abused its discretion by setting aside the second amended judgment. As an initial matter, we reject the Sassers' position that we should not address the Rogones' argument because the Arizona Supreme Court declined special action jurisdiction over the same contention. A declination of jurisdiction is not a decision on the merits that becomes law of the case. *Flores v. Cooper Tire & Rubber Co.*, 218 Ariz. 52, 60, ¶ 41, 178 P.3d 1176, 1184 (App.2008).

¶ 10 The Rogones argue that the trial court lacked jurisdiction to address the Sassers' motion to set aside the second amended judgment because the judge who heard that motion was not the judge who entered the second amended judgment. This argument has no merit. The Sassers brought a direct attack on the second amended judgment in the same case by the means provided for in Ariz. R. Civ. P. 60(c), arguing that the judgment failed to accurately reflect the rulings of the first judge and seeking an amended judgment consistent with those rulings. Though it might have been desirable to have a single judge consider these issues, consideration of a Rule 60 motion by a newly assigned judge raises no jurisdictional concerns. *See Hibbs v. Calcot, Ltd.*, 166 Ariz. 210, 214, 801 P.2d 445, 449 (App.1990); *see also Peterson v. Speakman*, 49 Ariz. 342, 348, 66 P.2d 1023, 1025 (1937) ("The jurisdiction of the court, no matter by which judge it is exercised, is that of the whole court, and not of one judge nor division thereof.").

¶ 11 The Rogones also contend that the Sassers' motion was untimely because it was filed almost a year after the court entered the second amended judgment. We disagree. Under Rule 60(c)(6), the court may set aside a judgment for fraud on the court at any time "because such fraud harms the integrity of the judicial process and is a wrong against the institutions set up to protect and safeguard the public." *Cypress on*

*Sunland Homeowners Ass'n v. Orlandini*, 227 Ariz. 288, 299–300, ¶ 43, 257 P.3d 1168, 1179–80 (App.2011) (citations omitted) (internal quotation marks omitted).

¶ 12 The Rogones next argue that even if the court had jurisdiction and the motion was timely, the court erred by granting relief. We review the setting aside of a judgment under Rule 60(c) for abuse of discretion. *Johnson v. Elson*, 192 Ariz. 486, 488, 967 P.2d 1022, 1024 (App.1998). Under Rule 60(c)(6), the court may relieve a party from a final judgment for "any ... reason justifying relief," provided that the movant can show extraordinary hardship or injustice for a reason other than the five specified in Rule 60(c)(1) through (5). *Hilgeman v. Am. Mortg. Sec., Inc.*, 196 Ariz. 215, 220, 994 P.2d 1030, 1035 (App.2000). The court has broad discretion to vacate a judgment under Rule 60(c)(6) when, after considering the totality of the circumstances and the equities involved, the court determines that it is appropriate to accomplish justice. *Amanti Elec., Inc. v. Engineered Structures, Inc.*, 229 Ariz. 430, 432, ¶¶ 7–8, 276 P.3d 499, 501 (App. 2012); *Gendron v. Skyline Bel Air Estates*, 121 Ariz. 367, 368–69, 590 P.2d 483, 484–85 (App.1979).

¶ 13 Here, the court found that the second amended judgment contained "multiple, material and surreptitiously added provisions not authorized by any prior court ruling," sufficient to constitute "other reason justifying relief" under Rule 60(c)(6). In the court's view, the provisions "negatively impact the integrity of the litigation process," the circumstances were "extraordinary," and "substantial prejudice and/or injustice" would result if it did not grant relief.

¶ 14 The Rogones' argument centers on two parts of the second amended judgment to which the Sassers objected. The first part is the description of the California lawsuit as involving "damages [Rose] caused the Trust when she sold the Trust's only asset entrusted to her for the benefit of her three sons and converted the net sale proceeds to her own personal use." The Rogones assert that this description was based on Rose's testimony and certain exhibits in the Arizona trial. Even if this were a fair characterization of

the evidence (a question we do not decide), a judgment should not recite details of the proceedings. *See* Ariz. R. Civ. P. 54(a). The challenged commentary was not included in the first amended judgment and was superfluous to the required description of the court's decision.

¶ 15 The second part concerns the E. Bronco Trail Property. The second amended judgment stated that the transfer was "fraudulent and of no force and effect, and is hereby set aside to the extent necessary to collect the California sister state judgment and the judgment herein" and that "Title shall so vest in, and be held in trust by, [Rose as] Trustee of the Correia Estate Trust solely for the benefit of [the Rogones]." The first amended judgment stated only that the transfer was "fraudulent and of no force and effect, and is hereby set aside," and vested title in Rose as trustee of the Correia Estate Trust. The Rogones argue that A.R.S. § 44–1007(A)(2) supports the additional language. Under § 44–1007(A)(2), a creditor may obtain avoidance of a transfer "to the extent necessary to satisfy the creditor's claim." But the Rogones' complaint did not request the relief encompassed in the added language, and the court never found that the conveyance should be set aside only as necessary for the Rogones to collect their judgment. The court did not abuse its discretion by setting aside the second amended judgment.

## II. THE COURT ERRED BY DENYING ROSE'S ASSERTION OF THE HOMESTEAD EXEMPTION.

¶ 16 Arizona provides a homestead exemption of up to $150,000 to any resident who is at least 18 years old and claims an "interest in real property in one compact body upon which exists a dwelling house in which the person resides." A.R.S. § 33–1101(A)(1). A person who meets the statutory qualifications holds the exemption by operation of law without having to make a written claim or record it. *Id.* § 33–1102(A).

¶ 17 We review de novo the interpretation and application of a statute. *Schwarz v. City of Glendale*, 190 Ariz. 508, 510, 950 P.2d 167, 169 (App.1997). We look first to its language as the best indicator of the legislature's intent. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). The homestead statutes should be liberally construed to effect their purpose of protecting the homeowner from the forced sale of the home. *Matcha v. Winn*, 131 Ariz. 115, 117, 638 P.2d 1361, 1363 (App.1981).

¶ 18 "The Arizona homestead statute is not ambiguous." *First Nat'l Bank of Doña Ana Cnty. v. Boyd*, 378 F.Supp. 961, 964 (D.Ariz. 1974). Nowhere does the statute require a person to satisfy notions of equity to qualify for the exemption. *See* A.R.S. § 33–1101(A)(1). A reading of A.R.S. § 33–1101(A) together with other statutory sections of the homestead exemption scheme further leads us to hold that the court erred by relying on equitable grounds to deny Rose the exemption. Under A.R.S. § 33–1103(A), a homestead is exempt from sale under a judgment except in certain expressly enumerated circumstances, none of which includes discretionary equitable considerations. Generally, when items are expressly articulated in a statute, the legislature is presumed to have intended to exclude those not listed. *Powers v. Carpenter*, 203 Ariz. 116, 118, ¶ 10, 51 P.3d 338, 340 (2002). A sale of a homestead that does not fall within the stated exceptions "is invalid and does not convey any interest in the homestead, whether made under a judgment existing before or after the homestead is established." A.R.S. § 33–1103(B). In addition, § 33–964(B) provides that a recorded judgment shall not become a lien on any homestead except as provided under § 33–1103, and § 33–1104 articulates the ways by which a person may abandon a homestead. Together these sections demonstrate a clear legislative intent that the homestead exemption be available without reference to equitable factors.

¶ 19 The Rogones cite *In re Farnsworth*, 384 B.R. 842 (Bankr.D.Ariz.2008), *In re Glaze*, 169 B.R. 956 (Bankr.D.Ariz.1994), and *Strahan v. Haynes*, 33 Ariz. 128, 262 P. 995 (1928), for the proposition that Arizona subjects the homestead exemption to equitable treatment. These cases are inapposite. In each, the judgment sought to be collected

from the homestead was based on damages incurred by a creditor in connection with a conveyance or wrongdoing involving the homestead property itself. Though Rose engaged in fraudulent conduct involving the E. Bronco Trail Property, the Rogones did not seek damages arising out of that conduct. Instead, they sought to collect on a judgment that was based on Rose's mishandling of unrelated trust assets. This is precisely the type of judgment to which the homestead exemption categorically applies. *See* A.R.S. §§ 33–964(B), –1103(A).

■ ¶ 20 The Rogones also contend that Rose is not entitled to claim the E. Bronco Trail Property as her homestead because she did not reside there until after judgment was entered. A debtor may, however, declare a homestead at any time prior to sale, and may designate the property to which the exemption will apply if she owns more than one. A.R.S. § 33–1102(A); *Ferguson v. Roberts,* 64 Ariz. 357, 361, 170 P.2d 855, 858 (1946).

### III. THE COURT PROPERLY AWARDED ATTORNEY'S FEES.

A. The Court Did Not Abuse Its Discretion by Ordering the Sassers To Pay Attorney's Fees.

■ ¶ 21 The Sassers contend that the court erred by awarding attorney's fees against them, arguing that it based the award solely on evidence of their liability for fraudulent property transfers rather than on any evidence pertaining to their conduct in defending against the action.

■ ¶ 22 Under A.R.S. § 12–349(A)(1)–(2), the court shall assess reasonable attorney's fees and expenses against an attorney or party who defends a claim without substantial justification or solely or primarily for delay or harassment. At the time of the court's ruling, "without substantial justification" meant that the defense "constitute[d] harassment, [wa]s groundless and [wa]s not made in good faith." A.R.S. § 12–349(F) (2005).[1] Groundlessness is determined objectively whereas harassment and

bad faith are subjective determinations. *Phx. Newspapers v. Dep't of Corrs.,* 188 Ariz. 237, 244, 934 P.2d 801, 808 (App.1997). "Groundless" and "frivolous" are equivalent terms, and a claim is frivolous "if the proponent can present no rational argument based upon the evidence or law in support of that claim." *Evergreen W., Inc. v. Boyd,* 167 Ariz. 614, 621, 810 P.2d 612, 619 (App.1991). "[T]he court shall set forth the specific reasons for the award," A.R.S. § 12–350, though the findings need only be specific enough to allow a reviewing court to test the validity of the judgment, *Bennett v. Baxter Grp., Inc.,* 223 Ariz. 414, 421, ¶ 28, 224 P.3d 230, 237 (App.2010).

■ ¶ 23 We review the trial court's findings of fact for clear error, but review de novo its application of the statute. *City of Casa Grande v. Ariz. Water Co.,* 199 Ariz. 547, 555, ¶ 27, 20 P.3d 590, 598 (App.2001). We view the evidence in the light most favorable to sustaining the award. *Bennett,* 223 Ariz. at 422, ¶ 31, 224 P.3d at 238.

¶ 24 In its first ruling on attorney's fees, the court made the following findings with respect to the Sassers' trial defense:

Defendants' defense constituted harassment, was groundless, was not made in good faith and was solely or primarily for delay.

In analyzing the A.R.S. § 12–350 factors the Court finds by a preponderance of the evidence that [Rose and John] transferred assets with the intent to hinder, delay or defraud Plaintiffs. . . .

After hearing the evidence at trial, and seeing the pleadings in this matter, the Court finds that Defendants [Rose and John] were aware there was a substantial likelihood [Rose] would not be successful in the California action and had the intent to hide her assets from Plaintiffs by transferring them. . . .

The Court finds that Defendants [Rose and John] defended the case in bad faith. They transferred assets intending to hinder, delay or defraud Plaintiffs. They

---

1. The current version of the statute does not require a showing of harassment. *See* A.R.S.

§ 12–349(F) (2013).

tried to hide [Rose's] assets from Plaintiffs and then denied that was their intent.

¶ 25 In denying the Sassers' motion for a new trial on attorney's fees, the court further stated:

Evidence of [Aiken Schenk]'s advisory role and Rose's intent behind the transfers was introduced at trial ... and the jury was instructed to consider it.... Rose's own admission at trial that she transferred the Arizona property during the pendency of the California litigation to insulate herself and assets from suit was an admission under the UFTA. Neither the jury nor the Court found Rose's trial testimony credible with regard to the Arizona and Arkansas property transfers, that [Rose and John] entered into a plausible post-nuptial agreement or that [Rose and John] engaged [Aiken Schenk] solely for asset planning services based upon Rose's testimonial veracity. In short, evidence pertaining to [Rose and John's] state of mind in defending the suit was ... presented at trial.

As a result, this Court finds that each of the three elements identified in A.R.S. § 12-349[F] is present and was proven by a preponderance of the evidence.

¶ 26 Although the court references the Sassers' liability for fraudulent property transfers, the trial judge, having heard the evidence firsthand, could appropriately have found that Rose's testimony was so lacking in credibility that her defense constituted harassment, was groundless and was not made in good faith.

¶ 27 The Sassers further contend that even if the court properly awarded fees against Rose, the award against John should be vacated. First, the Sassers argue that the Rogones suffered no injury, because under Arkansas law the property of a revocable trust is subject to claims of a settlor's creditors. However, as the trial court already noted in ruling on this argument, Arizona law and not Arkansas law governs John's trust. Second, the Sassers argue that John prevailed on the Rogones' claim with respect to the Hot Springs Property because the court concluded that it lacked jurisdiction to void transfer of it or to determine Rose's interest in it. Even though the court concluded that it lacked authority to take certain action related to the Hot Springs Property, it nevertheless found that the transfer was fraudulent and ordered John to convey Rose's interest in it to the Rogones once an Arkansas court determined the nature of her interest. Finally, the Sassers suggest that John could not be found liable for fraudulent transfer because he did not have a debtor-creditor relationship with the Rogones. The statutes governing fraudulent transfers focus on the validity of the transfer itself, providing creditors with remedies not only against the debtor and the property but also against transferees. *See* A.R.S. §§ 44-1004(A), -1007(A). In this case, the Rogones properly sued John as a transferee against whose property they sought a remedy.

**B. The Court Acted Within Its Discretion by Excluding Aiken Schenk from the Fee Award.**

¶ 28 The Rogones argue that the court erred by refusing to award attorney's fees against Aiken Schenk. In denying the fee request as to Aiken Schenk, the court found that counsel had defended the action appropriately based on the Sassers' representations and noted a lack of evidence that counsel knew of any fraudulent intent in executing the property transactions.

¶ 29 The record supports the court's findings. Rose testified that she had asked for assistance in placing the E. Bronco Trail Property in a limited liability company to minimize her personal exposure to lawsuits by tenants on that property. She further testified that she had sought help in ensuring that John's separate property would not be subjected to claims against her personally. Though Rose informed Aiken Schenk about the California lawsuit, conversations with her California attorney had led to the conclusion that she possessed sufficient additional assets to cover her estimated potential liability. Aiken Schenk also filed an affidavit stating that trial counsel had reviewed the complaint and the correspondence between the firm and Rose's California attorney, and based on consultations with the Sassers, counsel believed a genuine issue of material fact existed as to their clients' intent in executing the property

transactions. Viewing this evidence in the light most favorable to sustaining the court's decision, the denial of the Rogones' fee request as against Aiken Schenk was not an abuse of discretion.

### IV. THE COURT PROPERLY DENIED THE SASSERS' MOTION FOR A NEW TRIAL ON ATTORNEY'S FEES.

¶ 30 The Sassers argue that the court erred by denying their motion for a new trial on attorney's fees. We review the denial of such a motion for abuse of discretion. *Suciu v. AMFAC Distrib. Corp.*, 138 Ariz. 514, 520, 675 P.2d 1333, 1339 (App. 1983).

¶ 31 The Sassers contend that their trial attorney operated under a conflict of interest because he was from the same law firm as the attorney who had assisted the Sassers with the property transactions. They cite the trial attorney's response to the Rogones' motion for attorney's fees and argue that it focused solely on insulating himself and his firm from a potential fee obligation rather than on defending the Sassers. Even were we to assume that the Sassers' counsel faced an ethical conflict, such a violation did not entitle the Sassers to a new trial. The Rules of Professional Conduct are not intended to be invoked as a procedural weapon or to serve as a basis for civil liability. Ariz. R. Sup.Ct. 42 pmbl. ¶ 20. Civil litigants are not entitled to post-judgment relief based on the adverse consequences of their counsel's ineffective assistance. *See Glaze v. Larsen*, 207 Ariz. 26, 31, ¶ 20, 83 P.3d 26, 31 (2004); *Panzino v. City of Phoenix*, 196 Ariz. 442, 445, ¶ 7, 999 P.2d 198, 201 (2000).

¶ 32 The Sassers further contend that their trial attorney acted outside the scope of his authority because of the alleged conflict of interest. Attorneys serve as agents of their clients and bind them through actions they take within the scope of the representation. *Panzino*, 196 Ariz. at 447, ¶ 16, 999 P.2d at 203. Even where an agent has abandoned the principal, the agent retains apparent authority to bind the principal to third parties absent notice to the contrary. *Id.* at ¶ 17, 999 P.2d at 203. The Sassers do

not contend and the record does not suggest that they notified anyone that counsel's representation had been limited or terminated. The court properly denied the Sassers' motion for a new trial on attorney's fees.

### CONCLUSION

¶ 33 We affirm the ruling vacating the second amended judgment, affirm the order of attorney's fees, and affirm the denial of the Sassers' motion for a new trial. However, we reverse the portion of the judgment that precluded Rose from asserting the homestead exemption based on equitable grounds.

¶ 34 The Rogones request attorney's fees on appeal, citing A.R.S. § 12–349.