NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# Arizona Court of Appeals

## Division One

---

MARK FINCHEM; ANTHONY KERN; and PAUL GOSAR (each in his personal capacity), *Plaintiffs/Appellants*,

*v.*

CHARLENE FERNANDEZ (in her personal capacity), *Defendant/Appellee*.

No. 1 CA-CV 22-0647
FILED 8-10-2023

---

Appeal from the Superior Court in Yuma County
No. S1400CV202100146
The Honorable Levi Gunderson, Judge

**AFFIRMED**

---

COUNSEL

Broening Oberg Woods & Wilson PC, Phoenix
By Donald Wilson, Jr., Kelley M. Jancaitis
*Co-counsel for Plaintiffs/Appellants*

Blehm Law PLLC, Scottsdale
By Bryan James Blehm
*Co-counsel for Plaintiffs/Appellants*

Kolodin Law Group PLLC, Phoenix
By Christopher A. Vizkovic
*Co-counsel for Plaintiffs/Appellants*

Ballard Spahr LLP, Phoenix
By David Jeremy Bodney, Matthew E. Kelley, Kennison Lay
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Judge Jennifer M. Perkins and Judge Daniel J. Kiley joined.

---

**H O W E**, Judge:

¶1 Mark Finchem, Anthony Kern, and Paul Gosar (collectively "Plaintiffs") appeal the trial court's order awarding Charlene Fernandez her attorneys' fees under A.R.S § 12–349, which mandates such an award as a sanction against a party that brings or defends a claim without substantial justification. They contend, among other arguments, that the trial court erred in finding that they brought their defamation claims against Fernandez without substantial justification because she co-signed and published a letter to federal law enforcement requesting an investigation about their involvement in the events on January 6, 2021, at the United States Capitol.

¶2 The trial court did not err in awarding Fernandez attorneys' fees. Substantial justification is lacking when a claim is groundless and not made in good faith. A.R.S. § 13–349(F). The trial court correctly ruled that Plaintiffs' defamation claims were groundless because the statements they contend were defamatory were absolutely privileged as communications to law enforcement about potential criminal activity. The court also correctly found that Plaintiffs did not bring their claims in good faith because their complaint presented allegations relating to Fernandez's political positions that were irrelevant to the defamation claims.

**FACTS AND PROCEDURAL HISTORY**

¶3 The parties are current or former Arizona legislators and a United States congressman representing Arizona. On or about January 12, 2021, all 42 Democratic members of the Arizona legislature, including Fernandez, co-signed a letter to the Department of Justice ("DOJ") and the Federal Bureau of Investigations ("FBI") asking them to "fully investigate the extent" to which Finchem, Kern, Gosar, and Representative Andy Biggs "incited, encouraged, or participated in the lawless behavior that took

place" at the United States Capitol on January 6, 2021. Alleging that the "social media posts" of Finchem and Kern "strongly suggest[ed]" that they "were present at the riot" and "actively encouraged the mob," the co-signers of the January letter asserted that "[i]t is vital . . . that we learn what these elected officials knew about this planned insurrection and when they knew it."

¶4            Finchem and Kern thereafter sued Fernandez for defamation. They alleged that she "simultaneously published, conspired to publish, or aided in publishing the Criminal Referral to the media." They defended themselves by alleging that they were not involved in the "attack on the Capitol." They alleged that on January 7, 2021, Kern published a tweet condemning the violence. They also alleged that a few days after January 6, Finchem published a press release "categorically denying the press allegations, providing details regarding his movements and his reasons for being present in Washington, D.C. on January 6." They also alleged that the allegations in the January letter were published with actual malice. They alleged that Fernandez had "opposed and sought to defeat measures supported by Plaintiff to enhance election integrity in our State." They added that Fernandez's accusations were "motivated by animus and by a desire to shut down debate regarding the controversy over election fraud in the 2020 Presidential election." They alleged that she had historically disparaged Kern and accused him of being "vindictive for holding Democratic bills as rules chairman" in the Arizona House of Representatives. They alleged that she "call[ed] for his removal" as rules chairman. They sought damages and an order requiring Fernandez to retract her allegations.

¶5            In March, upon receiving the complaint, Fernandez wrote Plaintiffs requesting they dismiss the lawsuit because the claims were meritless under the First Amendment and the communications to law enforcement were absolutely privileged. She also warned Plaintiffs that she would seek attorneys' fees under A.R.S. § 12–349 and Arizona Rule of Civil Procedure ("Rule") 11.

¶6            In May 2021, Plaintiffs filed a first amended complaint ("FAC") adding Gosar as a plaintiff, expanding on their defamation claim to allege both defamation *per se* and defamation *per quod*—defamation that "is not apparent but is proved by extrinsic evidence." Black's Law Dictionary (11th ed. 2019). They also added claims of conspiracy to commit defamation and aiding and abetting defamation. And they alleged that "Plaintiffs have suffered past, present, and/or future pecuniary losses as a

result" pointing, as an example, to Kern's business, which allegedly lost clientele.

¶7            Further, they included allegations in the FAC that were not relevant to Fernandez's purportedly defamatory statements, such as that Fernandez "is essentially in favor of open borders" and allegations that "social media companies" acted in a biased manner to prevent the dissemination of certain "news stories that they deemed harmful" to one of the candidates in the 2020 election. As an example, they alleged that certain social media companies prevented circulation of stories about "highly damaging contents of" the President's son's laptop.

¶8            In August 2021, Fernandez wrote Plaintiffs' counsel again requesting dismissal of Plaintiffs' claims. Alleging that Plaintiffs' lawsuit was "aimed at gaining publicity," she asserted that a courtroom was not the "proper forum for such political activity."

¶9            Plaintiffs did not dismiss their FAC, and so Fernandez moved to dismiss the FAC for failure to state a claim. She argued that Plaintiffs could not pursue their defamation claims because the letter was protected as an absolutely privileged communication to law enforcement about possible criminal activity. She added that even if it were not privileged, Plaintiffs failed to sufficiently plead facts to establish that she had actual malice or knew the "statements were false or consciously disregarded subjective doubts about their truth."

¶10            Plaintiffs opposed Fernandez's motion to dismiss, arguing that she could not claim absolute privilege because she was not a witness present on January 6. They also argued that even if sending the January letter to the FBI were privileged, publishing it to the media was not privileged. Plaintiffs also moved for leave to file a second amended complaint ("SAC"). The SAC removed some allegations and reworded others. Plaintiffs also added that a "left-leaning" online journal published an article explaining that convicting the rioters for treason or insurrection for the January 6 events would be "nearly impossible." The SAC continued to maintain allegations from the FAC about Fernandez's support for open borders, social media companies in the election, and the President's son's laptop.

¶11            The court heard argument on the motions and granted Plaintiffs' motion to file the SAC at the end of the hearing. The court took Fernandez's motion to dismiss under advisement and later granted it. The court found that the January letter asked federal officials to investigate

Plaintiffs' involvement in the events of January 6, which went "to the heart of free speech and the right to petition the government in connection with matters of great public concern. [Fernandez] had the right to express her concerns, both as an individual and as a state legislator."

¶12 Fernandez then asked for her attorneys' fees under A.R.S. § 12–349, which mandates such an award as a sanction against a party that brings or defends a claim without substantial justification or primarily for delay or harassment. She also asked for fees under Rule 11(c), which authorizes sanctions against a party who brings a case for an improper purpose.

¶13 The court granted Fernandez's application for attorneys' fees and entered a final judgment against Plaintiffs for $75,616.20, for which all three Plaintiffs were jointly and severally liable, under A.R.S. § 12–349(A)(1)–(3) and Rule 11. The court found that the "Plaintiffs brought their claim without substantial justification, meaning that it was groundless and not made in good faith." The court found that Fernandez "had the right, together with 41 other Arizona lawmakers, to express her concerns to federal law enforcement officials" to request they investigate the involvement or participation of four named Arizona legislators in connection with the "insurrection." The court found that Fernandez's conduct "was clearly protected both by the right to free speech and the right to petition the government, as guaranteed by the First Amendment to the United States Constitution and by the corresponding provisions of Arizona's Constitution."

¶14 The court also found that "a significant portion of the original Complaint and the First Amended Complaint were written for an audience other than the assigned trial court judge." The court noted that the SAC "removed and reworded a number of such section, but *still* included the 'open borders' allegations against [Fernandez] which were *wholly irrelevant* to the instant proceedings." The court also found that Plaintiffs expanded the litigation in filing their FAC, adding a third plaintiff, and increasing the number of counts alleged against Fernandez. The court noted that fees were justified without regard to Rule 11. Plaintiffs timely appealed the award of Fernandez's attorneys' fees.

## DISCUSSION

¶15 Plaintiffs argue that the court erred in sanctioning them because their SAC was not frivolous or brought without substantial justification. We review the application of A.R.S. § 12–349 de novo. *Solimeno*

*v. Yonan*, 224 Ariz. 74, 81 ¶ 30 (App. 2010). We view "the evidence in a manner most favorable to sustaining the award and will affirm the trial court's findings unless clearly erroneous." *Takieh v. O'Meara*, 252 Ariz. 51, 61–62 ¶ 39 (App. 2021) (internal quotation marks omitted). We affirm the trial court's ruling if "correct for any reason apparent in the record." *Forszt v. Rodriguez*, 212 Ariz. 263, 265 ¶ 9 (App. 2006).

¶16　　　　The court did not err in entering sanctions. The court shall order attorneys' fees under A.R.S. § 12–349 against an attorney or party "if the attorney or party does any of the following": (1) "[b]rings or defends a claim without substantial justification"; (2) "[b]rings or defends a claim solely or primarily for delay or harassment"; (3) "[u]nreasonably expands or delays the proceeding"; or (4) "[e]ngages in abuse of discovery." A.R.S. § 12–349(A). A party brings a claim "without substantial justification" if the claim "is groundless and is not made in good faith." A.R.S. § 12–349(F); *see Rogone v. Correia*, 236 Ariz. 43, 50 ¶ 22 (App. 2014) (using "not made in good faith" interchangeably with "bad faith"). The court must provide specific reasons for the award. A.R.S. § 12–350. "[T]he findings need only be specific enough to allow an appellate court to test the validity of the judgment." *Takieh*, 252 Ariz. at 61 ¶ 38 (quoting *Bennett v. Baxter Grp., Inc.*, 223 Ariz. 414, 421 ¶ 28 (App. 2010)).

## I.　　Award of Attorneys' Fees

### A.　　Groundlessness

¶17　　　　Plaintiffs' defamation claims were groundless. A claim is groundless "if the proponent can present no rational argument based on the evidence of law in support of that claim." *Rogone*, 236 Ariz. at 50 ¶ 22 (quoting *Evergreen W., Inc. v. Boyd*, 167 Ariz. 614, 621 (App. 1991)). Groundlessness is an objective determination. *Id.*

¶18　　　　A defamation claim has merit when the plaintiff proves that a defendant (1) published a false statement concerning the person, (2) knew the statement was false and defamed the other, and (3) acted in reckless disregard of these matters or negligently failed to ascertain them. *Dube v. Likins*, 216 Ariz. 406, 417 ¶ 35 (App. 2007). But "[f]ormal or informal complaints to a prosecuting attorney or other law enforcement officer concerning violations of the criminal law are absolutely privileged." *Ledvina v. Cerasani*, 213 Ariz. 569, 573 ¶ 10 (App. 2006) (quoting Restatement (Second) of Torts § 598 cmt. e) (finding reports to police are related to judicial proceedings); *see also* Restatement (Second) of Torts § 587 ("A party to a private litigation . . . is absolutely privileged to publish defamatory

6

matter concerning another in communications preliminary to a proposed judicial proceeding.").

¶19        Here, the court found Plaintiffs' claims groundless because the January letter was a privileged communication to law enforcement about potential criminal activity. The January letter was addressed to the DOJ and FBI asking them to investigate Plaintiffs' involvement in the "attack on the Capitol." Because this communication was absolutely privileged based on evidence of law, Plaintiffs could present no rational argument for bringing the defamation claims against Fernandez. Their defamation claims were therefore groundless.

¶20        Plaintiffs argue, however, that *Ledvina*'s holding that complaints to law enforcement are privileged does not apply because Fernandez was not a crime victim or witness to the crime. *Ledvina*'s holding is not so narrow, however. While the defendant in *Ledvina* was a crime victim who made a report about the plaintiff to law enforcement, the court did not limit the absolute privilege to crime victims and witnesses. *See Simonds v. Ariz. Aerospace Found., Inc.*, No. 2 CA-CV 2018–0007, 2018 WL 4055654, *1 ¶¶ 3-4, *3 ¶ 12 (unpublished) (holding that "the absolute privilege applied to putative crime victims fully encompasses the HR director's police report regarding Simonds," although the director was neither the victim nor a witness to the statement). That is consistent with the purpose of the privilege, which "assure[s] utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing." *Ledvina*, 213 Ariz. at 574 ¶ 12 (quoting *Hagberg v. Calif. Fed. Bank*, 81 P.3d 244, 251 (Calif. 2004)). "The mere possibility of retaliatory defamation claims would also tend to discourage free and unfettered reporting to law enforcement authorities to assist the detection and prosecution of criminal activity." *Id.* at 573 ¶ 12.

¶21        Plaintiffs argue that exceptions to absolute privilege apply because Fernandez acted in bad faith in making the statements in the January letter, and the statements were "themselves criminal" because they were false. However, "[w]hen statements are absolutely privileged, the speaker is immune from civil liability and courts do not inquire into the declarant's motives or whether the statements were made in good faith." *See id.* at 571 ¶ 4. Even if the statements in the January letter were false, "[t]he defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense." *Green Acres Trust v. London*, 141 Ariz. 609, 613 (1984).

¶22            Citing *Mesnard v. Campagnolo*, 251 Ariz. 244 (2021), Plaintiffs argue that the privilege does not protect Fernandez's publication of the January letter to the media. In that case, the Arizona Supreme Court held that a legislator who modified an investigative report about another legislator before releasing it to House members and the public was absolutely immune from defamation. *Id.* at 249 ¶ 17, 250 ¶ 22. The Court ruled that the legislator was performing a legislative function regardless whether he acted with ill motives or actually defamed the legislator. *Id.* 249–250 ¶ 18. The Court also held, however, that the legislator was not absolutely immune from liability for publishing a news release wherein he communicated "only his personal views and plans rather than those of the House." *Id.* at 253 ¶ 33. Issuing the news release, the Court held, was a political act, not a legislative function. *Id.* at 252 ¶ 28.

¶23            Here, in contrast, while Plaintiffs allege that Fernandez personally published the January letter to the media, the January letter remains a statement to law enforcement about potential violations of criminal law that is absolutely privileged. *See Ledvina*, 213 Ariz. at 571 ¶ 4 ("[A]bsolute immunity immunizes absolutely . . . where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives."). Unlike the legislator in *Mesnard*, Plaintiffs here do not allege that Fernandez issued a news release that communicated her personal views or additional information beyond that in the January letter. *Mesnard* is thus distinguishable.

### B.    Bad Faith

¶24            In addition to bringing groundless defamation claims, Plaintiffs pursued their claims in bad faith. Whether a party acted in bad faith is a subjective determination. *Rogone*, 236 Ariz. at 50 ¶ 22. Plaintiffs were not shy in their pleadings to express their position on election integrity, a subject matter irrelevant to their defamation claim. They alleged that social media companies influenced the election. As an example, they alleged that these companies prevented circulation of stories about the President's son's laptop. They additionally alleged that Fernandez had "opposed and sought to defeat" election integrity measures which Plaintiffs supported. They even quoted a letter from a United States Senator—whom they expressly note is a Democrat—addressing problems with the electronic voting system. Plaintiffs also alleged that a "left-leaning" online journal published an article explaining that convicting the rioters for treason or insurrection for the January 6 events would be "nearly impossible." Allegations about such irrelevant and politically charged

subject matters demonstrated that they pursued their defamation claims in bad faith to advance a political agenda.

¶25 Plaintiffs also showed bad faith by highlighting the political animus between the parties. They alleged that Fernandez had historically disparaged Kern and accused him of being "vindictive for holding Democratic bills as rules chairman" in the Arizona House of Representatives. They alleged that she had wanted him removed as rules chairman of the Legislature's Rules Committee. They even alleged that Fernandez supported open borders. These allegations have nothing to do with Plaintiffs' claims for defamation. "The court system exists to hear legitimate legal disputes, not for airing political disputes or grievances." *Ariz. Republican Party v. Richer*, No. 1 CA-CV 21-0201, 2023 WL 4445282, *12 ¶ 58 (Ariz. App. July 11, 2023).

¶26 Moreover, after Plaintiffs filed their complaint, Fernandez warned them that the January letter was privileged. Plaintiffs then filed the FAC, adding a third plaintiff and additional claims. Fernandez sent another letter reiterating the warning. Yet Plaintiffs continued litigating. *See Takieh*, 252 Ariz. at 62 ¶ 40 (holding that plaintiff brought defamation action in bad faith because trial court had ruled earlier in the litigation that communications in peer-review process could not be used to prosecute defamation claim, but plaintiff amended his complaint alleging defamation based primarily on these communications). They did not make any effort to determine the validity of their claim in filing their pleadings, even going so far as to add more defamation claims in their amended pleadings. Including allegations in their pleadings that had no possible relevance to the defamation claim supports the trial judge's determination that "a significant portion" of Plaintiffs' pleadings "were written for an audience other than the assigned trial court judge."

¶27 Plaintiffs argue that the trial court was inconsistent in sanctioning them because it had praised the parties for their arguments during the oral argument. At the conclusion of the hearing on the motion to dismiss, the superior court judge thanked counsel "for their presentations," adding, "My compliments to the attorneys. The argument and the written pleadings were all very well done." Citing the judge's "praise of the parties' preparedness, arguments, and briefing," Plaintiffs argue that the trial court's subsequent imposition of sanctions is "inexplicable." The court's complimentary words at the conclusion of the hearing, they insist, "are further evidence of a lack of reasonable basis" for the sanctions the court imposed.

**¶28** The superior court's courteous words at the conclusion of the hearing cannot reasonably be construed as a finding that the parties' arguments were well-grounded in fact and law. On the contrary, by taking the matter under advisement, the court made clear it was not yet prepared to determine the merits of Fernandez's motion to dismiss and request for sanctions. After time for reflection and review of the relevant authorities, the court concluded that sanctions were warranted. As Plaintiffs themselves concede, a court can "change its mind—as it apparently did" here.

**¶29** Based on the evidence in the record, the trial judge did not abuse its discretion in finding that Plaintiffs' claims were groundless and pursued in bad faith, warranting sanctions under A.R.S. § 12–349(A)(1). Therefore, we need not reach Plaintiffs' arguments that they did not have to plead actual malice, or that if they did, they sufficiently pleaded it in the SAC. We also need not consider whether sanctions were proper under the other grounds of the statute or under Rule 11.

## II.    Attorneys' Fees on Appeal

**¶30** Fernandez requests her attorneys' fees and costs on appeal under A.R.S. § 12–349 because the appeal is on its face groundless and pursued in bad faith. Fernandez argues that Plaintiffs made "multiple false factual statements and dramatically mischaracterized settled law" in their pleadings and opening brief. We grant Fernandez her attorneys' fees and costs on appeal because she showed by a preponderance of the evidence that Plaintiffs brought their claims without substantial justification. A.R.S. § 12–349(A); *see In re Estate of Stephenson*, 217 Ariz. 284, 289 ¶ 28 (App. 2007). Plaintiffs request their costs under A.R.S. §§ 12–341 and –342(A), which we duly deny because they are not the prevailing party on appeal. A.R.S. § 12–341 ("The successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided by law."). They alleged claims on appeal that rendered their appeal groundless and pursued their claims in bad faith. *See* A.R.S. § 12–349(F).

**¶31** Plaintiffs could not bring a defamation claim against Fernandez for the statements in the January letter because the statements are absolutely privileged. *See supra* ¶¶ 18–20. Their pleadings were riddled with irrelevant allegations, *see supra* ¶¶ 24–27, and they continued to make irrelevant arguments on appeal, including arguing about what to call the January 6 events and defending their "open borders" allegation. Further, on appeal, they continue to focus on the parties' political differences, rather

than law and fact, to support their claims. Their appeal, therefore, is both groundless and brought in bad faith.

## CONCLUSION

¶32      For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA