NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

MICHELLE DEMAND, *Plaintiff/Appellee*,

*v.*

SEAN MINDERMAN, et al., *Defendants/Appellants*.

No. 1 CA-CV 24-0762
FILED 12-03-2025

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2021-017459
The Honorable Timothy J. Ryan, Judge *Retired*

**AFFIRMED**

———————————————

COUNSEL

Piskel Yahne Kovarik, PLLC, Spokane
By Ryan W. Reynolds, William B. Emmal, and Nicholas D. Kovarik
*Counsel for Plaintiff/Appellee*

Platt & Westby, P.C., Phoenix
By Andrew Rahtz, Brandon N. Sutter, and Abelardo Mea Rodriguez
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Judge Veronika Fabian delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Anni Hill Foster joined.

---

**F A B I A N**, Judge:

¶1     This case arises out of an ongoing and contentious multi-state litigation involving dissolution of marriage, breach of a commercial lease, and two property transfers. Michelle Demand ("Michelle") alleged Sean Minderman ("Sean") fraudulently transferred an Arizona property to his mother, Donna Jean Minderman ("Mother"), and then to Kyle AZ, LLC ("Kyle") to avoid indebtedness under an indemnification provision in Michelle and Sean's divorce decree. The superior court granted summary judgment in favor of Michelle based on Sean's, Mother's, and Kyle's failure to comply with Arizona Rule of Civil Procedure 56(c)(3) and awarded Michelle attorney's fees and costs under A.R.S. § 12-349.

¶2     On appeal, Sean, Mother, and Kyle (collectively "Appellants") argue an expert report created a genuine dispute of material fact precluding summary judgment. Because Appellants have waived any argument that the superior court erred in disregarding their controverting statement of facts, which contained the expert witness report, this Court affirms the superior court's grant of summary judgment and award of attorney's fees and costs.

## FACTS AND PROCEDURAL HISTORY

¶3     Sean and Michelle were married in 1997, separated in 2012, and divorced in Washington in March 2016 pursuant to a decree of dissolution ("the Divorce Decree"). During their marriage, Sean and Michelle entered an agreement to purchase the Frame Factory, Inc ("the Frame Factory")—an eyewear company—from Mother for $110,859 to be paid in monthly installments.

¶4     The Divorce Decree awarded Sean all assets and liabilities associated with the Frame Factory. It also included a hold harmless and indemnification provision:

> Each party shall hold the other harmless from
> any collection action relating to separate or

community liabilities set forth above, including reasonable attorney's fees and costs incurred in defending against any attempts to collect an obligation of the other party.

**¶5** Prior to the entry of the Divorce Decree, in April 2015, the landlord for the Frame Factory filed a lawsuit in Washington state court against Sean and Michelle as personal guarantors of the commercial lease for breach of contract ("the commercial lease lawsuit"). Sean was dismissed as a party when he filed for bankruptcy in March 2019. After Sean was dismissed, Michelle was found jointly and severally liable for breach of the commercial lease on January 21, 2020.

**¶6** Prior to his filing bankruptcy but after he had knowledge of the commercial lease lawsuit and Michelle's right of indemnity against him, on February 13, 2018, Sean transferred property he owned in Arizona ("the Arizona Property") to Mother "for and in consideration of the sum of $0.00."[1]

**¶7** In October 2020, the Washington court ordered Sean to indemnify Michelle for all damages, attorney's fees, and costs incurred in the commercial lease lawsuit ("the Washington indemnification order"). The Washington court, as authorized by the bankruptcy court, determined this debt was non-dischargeable in bankruptcy.

**¶8** On November 10, 2021, Michelle filed a complaint in Arizona against Sean and Mother under Arizona's Uniform Fraudulent Transfers Act ("UFTA"), *see* A.R.S. §§ 44-1001-1010, alleging Sean fraudulently transferred the Arizona Property to evade enforcement of the Washington indemnification order.

**¶9** Sean and Mother defended that the transfer was not fraudulent because Sean had fallen behind on his payments to Mother for the Frame Factory. Thus, he transferred the Arizona property to Mother in satisfaction of that debt and other loans she made for Sean's legal fees and costs and not for a fraudulent purpose.

**¶10** On September 26, 2022, Michelle filed a motion for summary judgment and a supporting statement of facts, arguing the transfer occurred with: (1) constructive fraud because the transfer was not for reasonably equivalent value and/or (2) the actual intent to deceive and avoid his debts

---

[1] A month later, Sean transferred another property he owned in Idaho to Mother using the same language.

to Michelle. In support of her motion, Michelle submitted a modification agreement stating "all matters in connection with the original Contract [for the Frame Factory] are liquidated and forever settled" and "the payments made to [Mother] under that Contract constitute full performance by [Sean and Michelle] rendering said Contract fully satisfied" and "forever terminated" **("the Modification Agreement")**. The Modification Agreement appeared to be signed and notarized by Sean, Michelle, and Mother.

¶11 On December 20, 2022, while the motion for summary judgment was pending, Mother quitclaimed the Arizona Property to Kyle, a Washington LLC owned by Mother and governed by Sean's brother. Kyle also used an e-mail and mailing address associated with Sean. Appellants then claimed the transfer to Kyle shielded the Arizona Property from enforcement. Subsequently, Michelle added Kyle as a defendant and Kyle participated in the summary judgment proceedings.

¶12 In response to Michelle's motion for summary judgment, Appellants filed a "preliminary" controverting statement of facts on February 3, 2023, challenging the Modification Agreement's authenticity. On February 27, 2023, Appellants filed another statement of facts, adding a declaration of a handwriting expert in support of that challenge. The court evaluated both statements of facts and found neither complied with Rule 56(c)(3)(B). The court then ordered Appellants to file another controverting statement of facts and explained what it wanted:

> You have to go fact by fact and tell whether it's disputed, undisputed. If it's undisputed, that's the end of the discussion. If it's disputed, you have to give me the factual reference to it. There's no shorthand allowed in this. It's you have to go paragraph by paragraph. That allows me to understand with exact clarity what you're disputing and why. That's my point.

Appellants then filed another statement of facts on April 27, 2023, which the court again found did not comply with Rule 56(c)(3).

¶13 In November 2023, the court granted partial summary judgment to Michelle, finding Appellants' statements of facts failed to comply with Rule 56(c)(3)(B) and thus presented "no disputed issues." Final judgment was entered on September 11, 2024 in Michelle's favor and awarding her attorney's fees and costs.

**¶14** This Court has jurisdiction over Appellants' timely appeal pursuant to Article VI, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and 2101(A)(1).

## DISCUSSION

**¶15** Appellants argue the authenticity of the Modification Agreement was a genuine dispute of material fact. Therefore, they argue summary judgment based on either actual intent to defraud or constructive fraud was in error. This Court disagrees.

## I. The Court Did Not Abuse Its Discretion in Not Considering Appellants' Controverting Statements of Facts.

**¶16** Appellants argue the declaration of a witness questioning the authenticity of the Modification Agreement created a question of fact. Michelle argues the superior court properly did not consider the declaration based on Appellants' failure to comply with Rule 56(c)(3). In their opening brief, Appellants did not argue that they complied with Rule 56(c)(3) or that the court erred in declining to consider their controverting statement of facts because they did not comply with that rule. Thus, Appellants' argument is waived. *See Lunney v. State*, 244 Ariz. 170, 174 ¶ 3 n.3 (App. 2017). However, because Appellants' failure to comply with Rule 56(c)(3) was one of the reasons for the superior court's award of attorney's fees, this Court will review for error.

**¶17** This Court reviews "questions involving the application and interpretation of court rules *de novo*." *Duckstein v. Wolf*, 230 Ariz. 227, 231 ¶ 8 (App. 2012). Rule 56(c)(3)(B) requires a party opposing summary judgment to file a statement in the form prescribed by Rule 56(c)(3)(A).

**¶18** Appellants filed three sets of controverting statements of facts. None of them complied with the requirement that Appellants "identify the numbered paragraphs in the moving party's statement that are disputed, citing for each disputed material fact the specific, admissible parts of the record that establish the dispute." Ariz. R. Civ. P. 56(c)(3)(A)(1). Instead, each of Appellants' statements of facts provided narrative statements regarding which facts were disputed, sometimes indicating which paragraphs they contested, but sometimes stating they did not have to. For example, Appellants at one point state "[Appellants] do not believe it is incumbent upon them to address the various editorial comments interspersed through Movant's factual recitals, such as 'in an attempt to deceive . . . .'"

**¶19** After finding Appellants did not comply with Rule 56(c)(3), the superior court determined there was no genuine issue of material fact and granted summary judgment. Under Rule 56(e), if "the opposing party does not [comply with Rule 56(c)(3)], summary judgment, if appropriate, shall be entered against that party." This Court reviews a superior court's decision to determine the effect of noncompliance with a rule for abuse of discretion. *See Birth Hope Adoption Agency, Inc. v. Doe*, 190 Ariz. 285, 288 (App. 1997).

**¶20** The superior court gave Appellants three separate opportunities to comply with Rule 56(c)(3). It even explained in detail what it expected Appellants to do. Yet Appellants' final controverting statement of facts still did not comply with Rule 56(c)(3). Under these circumstances, the superior court did not abuse its discretion.

## II. Michelle Established She was Entitled to Summary Judgment as a Matter of Law.

**¶21** Although it was not an abuse of discretion for the superior court to disregard Appellants' controverting statements of facts, the "mere absence of a genuine dispute of material fact does not automatically entitle a plaintiff to judgment—the plaintiff must also demonstrate that the evidence entitles it to judgment as a matter of law." *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213 ¶ 16 (App. 2012); Ariz. R. Civ. P. 56(a).

**¶22** This Court reviews a grant of summary judgment *de novo*, *Glazer v. State*, 237 Ariz. 160, 167 ¶ 29 (2015), and "view[s] the evidence and all reasonable inferences in the light most favorable to the non-moving parties." *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563 ¶ 3 n.1 (2018).

**¶23** Under A.R.S. § 44-1004(A), Michelle had to show:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under any of the following:
>
> 1. With actual intent to hinder, delay or defraud any creditor of the debtor.

2. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

(a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(b) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

¶24        There is no dispute that the Arizona Property was transferred to Mother and then to Kyle. The only question is whether the transfers occurred with actual intent to defraud under A.R.S. § 44-1004(A)(1) or with constructive fraud under A.R.S. §§ 44-1004(A)(2).

¶25        Actual intent to defraud occurs when a transfer is made with "actual intent to hinder, delay, or defraud any creditor of the debtor." *State ex rel. Indus. Comm'n. v. Wright*, 202 Ariz. 255, 260 ¶ 24 (App. 2002). The elements of fraudulent conveyance under the UFTA must be proven by clear and satisfactory evidence. *Gerow v. Covill*, 192 Ariz. 9, 17 ¶ 33 (App. 1998). Actual intent may be established through direct proof or "circumstantial evidence through which actual intent may be reasonably inferred." *Id.* The UFTA itself identifies the following badges of fraud, which support a finding of actual intent, including whether:

1. The transfer or obligation was to an insider.

2. The debtor retained possession or control of the property transferred after the transfer.

3. The transfer or obligation was disclosed or concealed.

4. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

. . .

9. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

A.R.S. § 44-1004(B); *see Premier Fin. Servs. v. Citibank*, 185 Ariz. 80, 84 n.2 (App. 1995) (referring to these considerations as "badges of fraud"). Here, Michelle's statements of facts in support of her motion for summary judgment asserted the following badges of fraud:

1.  Sean transferred the Arizona Property to an insider when he transferred it to Mother and then to Kyle.

2.  Appellants retained possession or control of the Arizona Property when they transferred it to Kyle, a Washington LLC owned by Mother with an e-mail and address associated with Sean.

3.  The transfer was concealed because Sean made no efforts to sell the Arizona Property on the open market.

4.  Appellants made the transfer after the debtors were sued because Sean transferred the Arizona Property while the lease litigation was pending and when he was aware of the indemnification order.

5.  Sean became insolvent as a result of the transfer as is evidenced by his bankruptcy.

¶26         "Often a single [badge of fraud] may establish and stamp a transaction as fraudulent. When, however, several are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent." *Gerow*, 192 Ariz. at 17 ¶ 34 (quoting *Torosian v. Paulos*, 82 Ariz. 304, 312 (1957)). Here, numerous badges of fraud specifically identified by the UFTA are present. There was no contradictory evidence because Appellants failed to comply with Rule 56(c)(3). Therefore, the superior court's grant of summary judgment on the basis of actual intent to defraud under the UFTA was proper.

### III. The Court Did Not Abuse Its Discretion by Awarding Attorney's Fees.

**¶27** Appellants argue the award of attorney's fees to Michelle was in error. This Court reviews the superior court's application of an attorney's fee statute *de novo*, and findings of fact for clear error, viewing the evidence in the light most favorable to sustaining an award. *See Rogone v. Correia*, 236 Ariz. 43, 50 ¶ 23 (App. 2014).

**¶28** In a November 17, 2023 minute entry, the court found:

> Consideration of an award of attorney's fees and sanctions are warranted. . . . This Court spent an inordinate amount of time going through the pleadings of counsel that were procedurally, factually and legally deficient. This time expenditure the Court and opposing counsel could have been avoided had defense counsel complied with the Arizona Rules of Civil Procedure.

**¶29** On September 11, 2024, after considering oral argument and briefings on attorney's fees and "in accordance with its previous rulings, including the Minute Entry dated November 17, 2023," the court awarded Michelle $85,174.50 in attorney's fees and $5,455.80 in costs.

**¶30** Appellants argue the award was improper because Michelle did not request attorney's fees in her pleadings. Under Arizona Rule of Civil Procedure 54(g)(1), "a claim for attorney's fees must be made in the pleadings or in a Rule 12 motion before the movant's responsive pleading." Contrary to Appellants' claim, Michelle did request attorney's fees and costs in her complaint. But even if she had not, Rule 54(i)(1) expressly excludes claims for attorney's fees that "may be awarded as sanctions under a statute or rule" from the requirements of Rule 54(g). Because the superior court awarded attorney's fees under A.R.S. § 12-349, which is a statute providing for sanctions, Michelle was not required to request attorney's fees and costs in her complaint. *See* Ariz. R. Civ. P. 54(i)(1).

**¶31** Next, Appellants argue the award was improper because the UFTA does not provide for an award of attorney's fees. However, an award of attorney's fees is permitted in a UFTA action where appropriate under A.R.S. § 12-349(A)(3). *See* A.R.S. § 44-1007(A)(4)(c); *Rogone*, 236 Ariz. at 50 ¶¶ 21-27; *Larkin v. State ex rel. Rottas*, 175 Ariz. 417, 430 (App. 1992)

("Neither A.R.S. section 12-349 nor the 'private attorney general doctrine' restricts appropriate fee awards to parties who prevail on the merits.").

**¶32**     The superior court set forth Appellants' "procedurally, factually and legally deficient" pleadings, which resulted in "time expenditure the Court and opposing counsel could have avoided had defense counsel complied with the Arizona Rules of Civil Procedure," as specific reasons for the award under A.R.S. § 12-349. Appellants do not dispute there was a sufficient factual basis to award fees. Instead, they argue the court's decision did not satisfy A.R.S. § 12-350's requirement that they "set forth the specific reasons for the award."

**¶33**     It is true courts must identify specific reasons for such a fee award. A.R.S. § 12-350. If a court fails to do so, however, a party must timely object, and failure to do so will waive any claim of error on appeal. *See Johnson v. Mohave Cnty.*, 206 Ariz. 330, 334 ¶ 17 (App. 2003). Here, Appellants never objected to the superior court's alleged failure to specify the reasons for the award. Thus, even assuming for purposes of Appellants' argument that the superior court did not adequately specify the reasons for its award, Appellants waived this argument.

## IV.    Attorney's Fees and Costs on Appeal.

**¶34**     This Court denies Michelle's request for attorney's fees pursuant to A.R.S. § 12-349. However, as the prevailing party, Michelle is awarded her costs upon compliance with Arizona Rule of Civil Appellate Procedure 21. A.R.S. § 12-341. Appellants' requests are denied.

## CONCLUSION

**¶35**     Because Appellants failed to show a genuine dispute of material fact, the superior court's grant of summary judgment for fraudulent transfer in favor of Michelle and award of attorney's fees are affirmed.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR